WILLIAM H. TALCOTT *vs.* HALSEY B. PHILBRICK.

Hartford Dist., Oct. T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS,
SEYMOUR and TORRANCE, Js.

The act of 1889 concerning elections, (Session Laws of 1889, ch. 247,) pro-
vides in the first section that all ballots shall be printed and of uniform
size, color and quality, to be determined by the secretary of the state,
and "shall contain, in addition to the official endorsement, only the
names of the candidates, the office voted for, and the name of the po-
litical party issuing the same," with directions as to the manner in
which they shall be printed; and the eleventh section provides that
"all ballots cast in violation of the foregoing provisions, or which do
not conform to the foregoing requirements, shall be void and not
counted." At an election in the city of Hartford there were regular
ballots provided which were prepared and issued by the "Republican,"
"Democratic" and "Prohibition" parties respectively, these parties
being organized, and known by those names, and placing those names
respectively upon the ballots issued by them. In addition to these bal-
lots a ballot was issued by certain persons which had at its head the
word "Citizens," but which was in all other respects the same as the
Republican ballots. There were eighty-six of these ballots cast, but
there was no party in the city known as the Citizens' party. Held
that the ballots were void and not to be counted.

And it seems that it did not affect the case that the ballots were not pre-
pared in that form fraudulently and with the intention of deceiving
voters.

[Argued at a meeting of the Judges on July 10th before the session of the
court, and decided October 8th, 1890.]

PETITION to *Thayer, J.,* under Gen. Statutes, § 58, which
authorizes a judge of the Superior Court, on petition, to hear
and decide upon contested claims to city and town offices.
The question in the case was whether certain ballots cast
for the defendant for the office of alderman at a city elec-
tion in the city of Hartford, were legal, under the act of
1889, known as the Secret Ballot Act. (Session Laws of
1889, chap. 247.*)

---

*The parts of the act material to the present case are as follows:

SEC. 1. All ballots used at elections held on the Tuesday after the first
Monday in November, and at all regular town and city elections, shall be
printed on plain white paper, furnished by the secretary of the state as here-

The petition alleged " that at the annual meeting of the city of Hartford for the election of city officers, held in said city on the 7th day of April, 1890, the petitioner was a candidate for alderman of said city, in the seventh ward of said city, and was duly elected at said election an alderman of said city in said ward, and at said election in said ward, as he verily believes, he received a plurality of the votes legally cast in said ward for said office; but that he was not declared elected to said office, but that Halsey B. Philbrick of said city was declared elected to said office by a plurality of one vote. The facts upon which the claim of your petitioner is founded are as follows : * * *

" 4. Your petitioner is informed and believes, and therefore avers, that at said election in said ward there were improperly and illegally counted for said Philbrick ten or more votes which were illegal and void ballots, and which should have been rejected, because said ballots had printed upon their face, as indicating the political party issuing the same, the word ' Citizens,' whereas, in fact, they should have had upon their face, as indicating the political party issuing the same, the word ' Republican,' because there was no such

---

inafter provided. Such ballots shall be of uniform size, color, quality, and thickness, for each ballot of the same class, to be determined by the secretary. In addition to the official endorsement, the ballots shall contain only the names of the candidates, the office voted for, and the name of the political party issuing the same. The name of the party issuing the ballot, the title of the office voted for, and the names of the candidates, shall be printed straight across the face of the ballots in black ink, and in type of uniform size, to be prescribed by the secretary of the state at least sixty days before any election held under the provisions of this act.

Sec. 9. * * * If any envelope or ballot shall contain any mark or device so that the same may be identified in such manner as to indicate who might have cast the same, it shall not be counted, but shall be kept by the moderator and returned to the town clerk in a separate package from the ballots which are counted at such election.

Sec. 12. All ballots cast in violation of the foregoing provisions, or which do not conform to the foregoing requirements, shall be void and not counted; provided, however, that any voter may alter or change his ballot by erasing any name therefrom, or by inserting in place of any name thereon, in writing or by a paster, the name of any person for any office to be voted for thereon other than the person thereon named for such office.

party as the Citizens' party in said election, and no candidates were nominated for any office voted for at said election by a party known as the Citizens' party, and no ballots were issued to be used in said election by any party known as the Citizens' party, and because said ballots bore upon their face the names, and all the names, of the persons regularly nominated by the party known as the Republican party, for the various offices voted for at said election, and the word ' Citizens ' was printed on said ballots, and they were thus issued fraudulently, and with the intention of deceiving, misleading, and defrauding the voters at said election."

To this paragraph of the petition the defendant answered as follows :—

" The defendant admits that at said election ten or more ballots were cast for him, having on their face the word ' Citizens,' each of which ballots bore upon its face all the names of the persons nominated by the Republican party for the various offices voted at said election ; and all the other allegations of said paragraph are denied. The persons so nominated were some of them Republicans and some Democrats, and such nominations were made with the expectation that citizens would vote for them without regard to their individual party affiliations. The word ' Citizens ' was so printed at the top of said ticket, because persons not members of the Republican party would naturally prefer not to cast a ballot with the name of that party prominent thereon, while they desired to vote for the persons whose names were so placed on the ticket ; but not with any intention or desire to defraud or deceive any voters, nor would such placing the word ' Citizens ' tend to deceive any voter."

This answer was denied by the petitioner. The judge made the following finding :—

At the annual meeting of the city of Hartford, held on the 7th day of April, 1890, for the election of city officers, the petitioner and the respondent were candidates for the office of alderman of said city, in the seventh ward thereof, duly nominated by the Democratic and Republican parties respectively, and were each voted for for that office. The

respondent was declared elected to the office by a plurality of one vote over the petitioner. Ten ballots were cast and counted for the respondent for said office at said election, which, in addition to the official indorsement, contained and bore upon their face the names and all the names of the persons regularly nominated by the Republican party in their caucus for the various offices to be voted for in said ward at said election, with the name of the office to be voted for. Said ballots also contained and bore upon their face the word "Citizens." These ballots were prepared and issued by the Republican party. No party known as the Citizens' party nominated any candidates for any office prior to said election to be voted for thereat, and no party known as the Citizens' party issued any ballots to be used and voted at said election. The Republican party, the Democratic party, and the Prohibition party, each made regular nominations, prior to said election, of candidates for the various offices to be voted for. Each of said parties issued ballots to be used at said election, headed by the names of the parties respectively. Six general officers, to be voted for by voters throughout the city, in addition to ward officers, to be voted for only in their respective wards, were to be chosen at said election, namely, mayor, clerk, treasurer, collector, auditor and marshal, the general officers and ward officers being voted for in the different wards upon one ballot. The Republican party at their caucus prior to said election nominated republicans as their candidates for mayor, treasurer and marshal, and democrats as their candidates for clerk, collector and auditor. The Democratic party at their caucus nominated as their candidates for clerk, collector, treasurer and auditor the same persons who were nominated for those offices by the Republican party—three Democrats and one Republican— and nominated Democrats as their candidates for mayor and marshal. After these nominations were made, the tickets before mentioned bearing the word "Citizens" were prepared and issued as above set forth. It has been the custom for a great many years to prepare a ticket called a "Citizens' ticket" composed of candidates of both parties,

Talcott *v.* Philbrick.

so as to have a ticket for people who did not want to vote for the entire ticket of either party, and to give them a ticket that was not a party ticket. In ward five, which is strongly Democratic, the Republican party made no nomination for ward officers, and a ticket headed "Citizens" issued by the Republican party as aforesaid at said election in that ward contained the names of all the persons nominated on the general ticket by the Republican party, and the names of all the persons nominated by the Democratic party for ward officers in that ward. Two hundred of these ballots were cast in said ward. No ticket containing the word "Republican" was printed or issued in said ward five. In all the other wards of the city, except wards one, two and three, ballots containing the word "Citizens" at their head, and bearing all the names of the Republican party for general and ward officers, were cast. The total number of such ballots cast was eighty-six.

The word "Citizens" was not printed upon the ballots cast for the respondent as aforesaid fraudulently and with the intention of deceiving, misleading and defrauding voters at said election. The chairman of the seventh ward Republican committee gave some of the ballots to the Republican keeper of the ticket-booths in the seventh ward, with instructions, if any one asked for these tickets, to give them to him, and they were placed in the ticket-booths in said ward in the same manner as tickets with other names thereon were given to voters, when called for, openly, and in the same manner as all the other tickets, and were also placed in the booths provided for the preparation of ballots for the voter in the same manner as all other tickets.

There were cast for the petitioner at said election six hundred and ten ballots for said office of alderman. There were cast for the respondent at said election for the same office, counting said ten ballots containing the word "Citizens," as aforesaid, six hundred and eleven ballots. The respondent claimed, and asked the judge to rule, that said ten ballots containing the word "Citizens" were legal ballots and lawfully counted for him. The petitioner claimed that said

ballots were void, and ought not to be counted for the respondent. The judge did not rule as requested by the respondent, but ruled, held and decided that said ballots were void and could not be counted for the respondent, and that the petitioner, and not the respondent, was elected alderman in ward seven at said election.

The defendant appealed to this court.

*C. E. Perkins* and *A. Perkins*, for the appellant, cited— *Owens* v. *State ex rel. Jennett*, 64 Texas, 500 ; *Williams* v. *State ex rel. Vasmer*, 69 id., 368 ; *Commonwealth* v. *Woelper*, 3 Serg. & R., 29 ; *State ex rel. Julian* v. *Adams*, 65 Ind., 393 ; *Quinn* v. *Markoe*, 37 Minn., 439 ; *Shields* v. *McGregor*, 91 Misso., 534 ; *Gumm* v. *Hubbard*, 97 id., 311 ; *Steele* v. *Calhoun*, 61 Miss., 556 ; *Oglesby* v. *Sigman*, 58 id., 502 ; *State ex rel. Mahoney* v. *McKinnon*, 8 Or., 487 ; *Kirk* v. *Rhoads*, 46 Cal., 398 ; *Wyman* v. *Lemon*, 51 id., 273 ; *Coffey* v. *Edmonds*, 58 id., 521 ; *Kellogg* v. *Hickman*, 12 Col., 256.

*E. H. Hyde, Jr.*, for the appellee, cited—*Stanley* v. *Manly*, 35 Ind., 275 ; *Druliner* v. *The State*, 29 id., 308 ; *State ex rel. Julian* v. *Adams*, 65 id., 393 ; *Commonwealth* v. *Woelper*, 3 Serg. & R., 29 ; *Ledbetter* v. *Hall*, 62 Misso., 422 ; *Shields* v. *McGregor*, 91 id., 534 ; *Gumm* v. *Hubbard*, 97 id., 311 ; *State ex rel. Mahoney* v. *McKinnon*, 8 Or., 487 ; *Oglesby* v. *Sigman*, 58 Miss., 502 ; *Perkins* v. *Carraway*, 59 id., 222 ; *Steele* v. *Calhoun*, 61 id., 556 ; *Reynolds* v. *Snow*, 67 Cal., 497 ; *Williams* v. *The State ex rel. Vasmer*, 69 Texas, 368.

CARPENTER, J. The object of the statute of 1889 is obvious ;—it is to secure an honest vote, correctly expressing public sentiment, by preventing fraud, corruption and intimidation. Fraud, by placing it in the power of every voter to obtain an official ballot from the representatives of the leading parties, who are duly sworn to a faithful performance of their duties ; and in like manner an official envelope, in which to enclose his ballot before voting. This would seem to effectually preclude any opportunity for fraud or

imposition.   Corruption, by making it impossible for any
one who would bribe or otherwise corrupt a voter to know
that the required vote was actually deposited.   Intimida-
tion, by giving to each voter an opportunity to select and
prepare his ballot, and to deposit it free from observation,
and in such a manner that no one but himself can possibly
know how he votes unless he chooses to disclose it.   To
this end certain requisites in respect to ballots and envelopes
are prescribed.   We are relieved of any obligation to inquire
as to the necessity or reason of this or that requirement;
and we are not at liberty to dispense with anything that is
required, whatever the reason for it may be, or even if with-
out any apparent reason at all.   The legislature has spoken,
and obedience is our first and only duty.   It is at liberty to
throw around the ballot box such safeguards and regulations
as it may deem proper, and it is the duty of the citizen to
conform thereto.   Some inconvenience is not too great a
price to pay for an honest pure ballot.

What has the legislature required?   The requirements
material to this case relate to the ballot.   The first section
of Chap. 247, Acts of 1889, p. 155, is as follows:—

" All ballots used at elections held on the Tuesday after
the first Monday in November, and at all regular town and
city elections, shall be printed on plain white paper, fur-
nished by the secretary of the state as hereinafter provided.
Such ballots shall be of uniform size, color, quality and
thickness, for each ballot of the same class, to be determined
by the secretary.   In addition to the official endorsement,
the ballots shall contain only the names of the candidates,
the office voted for, and the name of the political party is-
suing the same.   The name of the party issuing the ballot,
the title of the office voted for, and the names of the candi-
dates, shall be printed straight across the face of the ballots,
in black ink, and in type of uniform size, to be prescribed
by the secretary of the state at least sixty days before any
election held under the provisions of this act.   Whenever
paper shall be furnished to any party as herein provided,
the secretary shall deliver with such paper printed instruc-

tions prescribing the size of type to be used. The secretary shall cause blanks to be prepared of the dimensions prescribed by him, and shall cause to be printed on the back of each blank ballot the words ' Official Ballot.' "

Section 12 of the same act is as follows:—" All ballots cast in violation of the foregoing provisions, or which do not conform to the foregoing requirements, shall be void and not counted ; provided, however, that any voter may alter or change his ballot by erasing any name therefrom, or by inserting in place of any name thereon in writing or by a paster the name of any person for any office to be voted for thereon other than the person thereon named for such office."

The question relates not to the paper, but to the printing or writing thereon. Four things only are allowable:—the official endorsement, the names of the candidates, the office voted for, and the name of the political party issuing the ballot.

The finding is explicit,—that the ballots in question were issued by the Republican party, that they did not contain the name of that party, and that they did contain the word, " Citizens," (thus purporting to have been issued by citizens, or an organization of citizens, as distinguished from the other parties,) and that there was no such party or organization in the field at that election.

Does such a ballot conform to the statute? The ballot does not speak the truth. It purports to have been issued by a citizens' party, but it was in fact issued by the Republican party. It implies that there was a citizens' party, but there was not. So that if the argument that the name of the party issuing the ballot may be omitted altogether is sound, it will hardly justify a misrepresentation.

But is the argument sound? The clause, " the ballots shall contain only the names of the candidates, the office voted for, and the name of the political party issuing the same," if construed by itself, might perhaps be regarded as permissive and not mandatory. What is the ballot? It consists not merely of the paper of the prescribed size and

quality, but also of the required printing thereon. No part may be omitted. If the name of the party may be omitted, so may the name of the candidate or office. If either of the last two is left out its validity as a ballot is destroyed. That demonstrates the absurdity of the argument when applied to those requisites. And yet the grammatical formation of the sentence is such that the argument applies as well to them as to the name of the party.

But this clause cannot be construed by itself; it must be taken in connection with other parts of the act. The next sentence in the same section is mandatory in terms: "The name of the party issuing the ballot, the title of the office voted for, and the names of the candidates shall be printed straight across the face of the ballots, in black ink, and in type of uniform size, etc." It will hardly do to say that the statute means that these three things shall be so printed *if printed at all*. That is an interpolation inconsistent with the spirit and object of the act.

The proviso in the twelfth section is significant. "Any voter may alter or change his ballot by erasing any name therefrom, or by inserting in place of any name thereon in writing or by a paster the name of any person for any office, etc." No other erasure or writing is allowed; all else must be printed. If any other writing is allowed other provisions of the statute are rendered nugatory and meaningless. Expressing in terms what may be done prohibits the doing of anything else.

Our conclusion is that these ballots were not legal, and that there is no error in the judgment.

In this opinion LOOMIS and SEYMOUR, Js., concurred.

ANDREWS, C. J., (dissenting.) At the city election holden in the city of Hartford on the first Monday of April, 1890, for the choice of a mayor, aldermen and other city officers, the plaintiff was a candidate for alderman in the seventh ward. The defendant was the opposing candidate, and was declared elected by a plurality of one vote over the plaintiff.

Talcott v. Philbrick.

The plaintiff brought his complaint to a judge of the Superior Court, pursuant to the fifty-eighth section of the General Statutes, claiming that he should be certified to have been elected instead of the defendant. The complaint was in five paragraphs. A demurrer was sustained to the first and second paragraphs and no evidence was offered to prove the averments contained in the third and fifth. The fourth only was left. In that paragraph the plaintiff alleged that "in said election in said ward there were improperly and illegally counted for the defendant ten or more votes which were illegal and void ballots, and which should have been rejected because said ballots had printed upon their face, as indicating the political party issuing the same, the word 'Citizens,' whereas in fact they should have had upon their face as indicating the political party issuing the same the word 'Republican,' because there was no such party as the 'Citizens' party' in said election, and no candidates were nominated for any office voted for at said election by a party known as the 'Citizens' party,' and no ballots were issued to be used in said election by any party known as the 'Citizens' party,' and because said ballots bore upon their face the names and all the names of the persons regularly nominated by the party known as the Republican party for the various offices voted for at said election, and the word 'Citizens' was printed on said ballots, and they were thus issued fraudulently and with the intention of deceiving, misleading and defrauding the voters at said election."

The material facts upon which the plaintiff's claim is founded, as so set forth, are that ten or more illegal and void ballots were counted for the defendant when they ought to have been rejected; which ballots were illegal and void "because the word 'Citizens' was printed on them and they were thus issued fraudulently and with the intention of deceiving, misleading and defrauding the voters at said election." This ground of the illegality of the ballots is stated in clear, positive and direct terms. As the allegation of fraud without the facts indicating the fraud would be insufficient, the complaint sets forth the facts from which the

fraud and the intent to deceive are made to appear, namely, that they had printed upon their face the word " Citizens " when they should have had the word " Republican ; " that there was no Citizens' party at said election which nominated candidates or issued ballots ; that said ballots had on them the names of the Republican candidates, etc., etc. And upon these facts the paragraph concludes by averring that the word " Citizens " was printed on said ballots, and they *were thus issued* fraudulently and with the intent to deceive the voters at said election. With these facts alleged the paragraph showed a good ground of action, well pleaded, and it withstood the test of a demurrer.

The general rule of pleading is (Gould's Pleading, chap. 3, section 28), that all material facts must be stated in positive and direct terms and not argumentatively (that is, in a manner which leaves it to be collected by inference), nor by way of recital, as under a " whereas." This requisite is prescribed not only for the sake of precision but also that the adverse party may be enabled to traverse the matter alleged directly and distinctly. The material facts are such as are essential to the right of action or defense. To say that ballots were illegal without the facts which show the illegality would mean nothing. The facts from which the illegality is claimed to arise are the material facts. They are essential to the plaintiff's cause of action. It must be assumed that every pleader intends to state his ground of action or defense according to law, and that where one cause of action clearly appears in any pleading, if any other might be made out by argument or inference from the same pleading, such other cause was not intended to be stated. It cannot be supposed that any party makes his pleading faulty by design. In this complaint, as one ground of the illegality of the ballots very plainly appears—the fraud and intent to deceive—it must be supposed that no other one was intended to be stated. If there is any other which might be made out by argument or inference it cannot be held to be of the substance of the complaint. *Holly* v. *Brown*, 14 Conn., 268, STORRS, J. The demurrer, the answer and the reply, all

show that no ground why the ballots were illegal and void, other than the fraud and intent to deceive, was in the mind of the parties at any time before the trial. Nothing else was put in issue.

The finding is " that the word 'Citizens' was not printed on said ballots cast for the respondent as aforesaid fraudulently and with the intention of deceiving, misleading and defrauding the voters at said election." This negatives all the substantive averments in the complaint—all that were put in issue. The other facts found show that all the allegations of the defendant's answer were substantially proved. All the facts having been found in favor of the defendant judgment should have been given in his favor. *Atwood* v. *Welton*, 57 Conn., 514; *Powers* v. *Mulvey*, 51 Conn., 432. The trial judge however rendered judgment against the defendant, and so deprived him of his office for a cause not alleged in the complaint and on which he has never had an opportunity to be heard.

It is found that the ballots in question were prepared and issued by the Republican party, and it is claimed that they were therefore void by the provisions of the statute passed at the last session of the legislature. We have already pointed out that it is not alleged in the complaint, unless as it may be made out by argument or inference, that the ballots claimed to be void were issued by the Republican party, and it is not alleged even by inference that they were illegal for *that* reason.

The contention of the plaintiff now is, that any ballot having on it the name of a political party other than the one by which it was issued is absolutely void, no matter by whom it may have been cast and entirely irrespective of the innocence or the good faith of the voter himself, and also irrespective of the motive that might have actuated the party issuing it. According to this claim the ballots in question were void for the reason that they were issued by one political party and had on them the name of another political party. Neither the innocence of the voter using them nor any fraud of the party issuing them could help or

harm. These ballots were void whether there was a citizen's party taking part in the election or not. If they had had on them the word "Democratic," or the word "Prohibition," in place of the word "Citizens," they would have been void. If having on them the word "Citizens" they had been issued by the Democratic party or the Prohibition party, they would in like manner have been void. If they had been issued by the Democratic party or the Prohibition party, designedly and for the very purpose of entrapping some of their political opponents into using void ballots, such design could not be taken into consideration. Two hundred and eighty-six duly registered electors of the city voted ballots like those cast for the plaintiff. It is found that "it has been the custom for a great many years to prepare a ticket called a 'Citizens' ticket' composed of candidates of both political parties, so as to have a ticket for people who did not want to vote for the entire ticket of either party and to give them a ticket that was not a party ticket." It is very probable that some, perhaps all, of the two hundred and eighty-six, were persons who did not attend any caucus, who came to the voting place and finding these ballots in the ticket booths in the same way as all other tickets and given out to voters when called for, openly, and in the same manner as all other tickets were given out, relying on the former custom, voted them in entire good faith. Indeed, the language of the finding compels the belief that each of the voters who cast any one of these ballots did so with the full knowledge of what it contained, and voted for each of the candidates named thereon precisely as he intended to vote.

Any construction, either of law or fact, that will disfranchise such a number of voters under such circumstances should be adopted only upon the clearest grounds. Doubtless the legislature has the constitutional power to place any and all restrictions about a ballot or about the act of voting which in its judgment are necessary or proper to secure independent action by the voter, or to make intimidation, cheating or bribery at the polls impossible, or as nearly so as can be done by legislative enactment. And where the legis-

lature has in clear and explicit words said that a ballot shall be void for any cause, the courts must so declare, even though the cause seems to them unreasonable. But on the other hand no voter is to be disfranchised and no ballot is to be declared void on doubtful construction. All statutes tending to limit the exercise of the elective franchise by the citizen should be liberally construed in his favor, and unless a ballot comes within the letter of the prohibition against a particular kind of a ballot it should be counted. A great constitutional privilege—the highest under the government—is not to be taken away on a mere technicality, but the most liberal intendment should be made in support of the elector's action whenever the application of the common sense rules which are applied in other cases will enable the courts to understand and render it effectual. Cooley's Const. Limitations, 5th ed., 769 ; *Owens* v. *State ex rel. Jennett,* 64 Texas, 500 ; *Williams* v. *State ex rel. Vasmer,* 69 id., 368 ; *Kellogg* v. *Hickman,* 12 Col., 256 ; *Kirk* v. *Rhoads,* 46 Cal., 398 ; *The People ex rel. Smith* v. *Pease,* 27 N. York, 45, 81 ; *The People* v. *Kilduff,* 15 Ill., 492 ; *Druliner* v. *The State,* 29 Ind., 308 ; *Millholland* v. *Bryant,* 39 id., 863.

So much of the act of 1889 as is applicable to the present inquiry is as follows :—

" Section 1. All ballots used at elections held on the Tuesday after the first Monday in November, and at all regular town and city elections, shall be printed on plain white paper, furnished by the secretary of the state as hereinafter provided. Such ballots shall be of uniform size, color, quality, and thickness for each ballot of the same class, to be determined by the secretary. In addition to the official endorsement, the ballots shall contain only the names of the candidates, the office voted for, and the name of the political party issuing the same. The name of the party issuing the ballot, the title of the office voted for, and the names of the candidates shall be printed straight across the face of the ballots, in black ink, and in type of uniform size, to be prescribed by the secretary of the state at least sixty days before any election held under the provisions of this act."

Section 12. " All ballots cast in violation of the foregoing provisions, or which do not conform to the foregoing requirements, shall be void and not counted."

It cannot be claimed that the ballots in question are made void by any direct words in the statute. It is claimed that by construction they are forbidden and so made void. The claim is that the word " only," as used in the first section, when it says that the ballots " shall contain only the names of the candidates, the office voted for, and the name of the political party issuing the same," has such a force that it prohibits the printing on a ballot of everything except the things enumerated. It is true that affirmative words are often in their operation negative of other things than those affirmed. So sometimes negative words have an affirmative force to exclude things contrary. But this argument proves too much. If the word " only," as used in the statute, forbade the printing on these ballots the word " Citizens " because the Citizens' party did not issue them, it requires that the word Republican should be printed on them because the Republican party did issue them. The same rule that makes these ballots void for the reason that the word " Citizens " *was* on them, would make them void if the word Republican was *not* on them. The rule invoked is that any law directing a thing to be done in a certain manner implies that it shall not be done in any other manner. The law that says these ballots were void for the reason that they had on them the name of a political party other than the one that issued them, says also that they would be void if the name of the political party that issued them was omitted.

The statute of 1889, a part of which is above quoted, uses the expression " political party " repeatedly and in such connections as indicate that the legislature intended a political party in the ordinary sense of that expression— as a numerous body of voters holding, in general, the same political opinions, duly organized so as to be capable of party action, and having committees or other agencies by which ballots could be issued, and also having a recognized membership. And when the statute requires the name of

Talcott v. Philbrick.

the political party that issues any ballots to be printed on them, it means a political party in that sense; and if every ballot not having on its face the name of the political party issuing it is void, then it is void unless it has on its face the name of such a political party as the statute intends. If this is the law, then every voter must adopt the ballot of some such political party at every election or be disfranchised.

The ballots now being considered were issued by the Republican party, but, as it is found, not with any fraudulent intent or design to deceive any voter. If the statute means what the plaintiff argues that it means, then at some other election what is to hinder a political party—taught perhaps by the suggestions of this case—from issuing the complete and perfect ballots of its opposing political party, fraudulently and with the intent to deceive, and inducing some or many of that party to use them? The ballots would be void and would be rejected. The innocent voter would lose his vote. But the persons who issued the ballots are by the statute not even censured. They could not be punished under section 282 of the General Statutes, because the voters would vote for the persons for whom they intended to vote. By this construction the statute, instead of being a protection to the voter from fraud and imposition, is made to increase the opportunities for fraud, while it affords complete immunity to the doer of the fraud.

The object sought to be attained by the secret ballot law and which justifies its passage is, that each voter shall have a time and a place to prepare his ballot, secluded from all observation, so that it cannot be known to others either then or at any time afterwards for what person or with what party he voted. This object cannot be too highly commended. To secure it the individual voter may well submit to some inconvenience. It tends to promote free and independent action on the part of the voter by enabling him to escape those influences which otherwise might be brought to bear upon him to prevent the real expression of his sentiments and by protecting him then and at all times thereafter

against reproaches, animadversion or any other prejudice, on account of his having voted according to his own judgment. But this object, valuable as it is, will be defeated if the statute is so construed that it opens a door to frauds hitherto impossible, and if the voter, after all, is liable to have his ballot rejected for matters over which he has no control. The ballot law provides for ticket booths where every voter may obtain his ballot. It also prohibits all peddling of ballots within one hundred feet of the voting place, and this virtually compels the voters to procure their ballots at the booths. The booth-keepers are required to furnish to any voter the ballot of any political party that he may desire, and they are sworn to the faithful discharge of their duty. The voter has no means of knowing by what political party any ballot is issued and cannot possibly tell whether or not it was issued by the political party whose name it bears. Perhaps the booth-keepers do not know. The voter asks for a ballot such as he desires. The only assurance he can have that he gets a valid ballot and not a void one, is that he finds it at the place where the law has directed him to obtain it and that he takes it from the officer whom the law has appointed to deliver it to him. This ought to be an assurance upon which he could rely with perfect safety. He has no control over any other matters respecting the ballot. If two hundred and eighty-six legal voters, who have taken their ballots from the booth-keepers, are disfranchised at one election because the booth-keepers have supplied them with void ballots, the same or a larger number may at some other election be disfranchised for the same cause. What has happened may happen again. What happened at this election innocently may happen again by design. It is entirely within the range of political exploits for a booth-keeper to deliver to voters ballots bearing the name of one political party but issued by another political party. This case is an illustration. If the booth-keeper should do it innocently, then no one could be punished. And though he should do it by design, he could not be punished if he

gave to the voter the ballots for which he asked. Punishing the booth-keeper, however, does not help the voter.

It is incredible that the legislature intended to pass any act from which such results could possibly follow. The construction claimed cannot be the right one. Even if it is doubtful it ought not to be adopted. In cases of doubt the doubt should be resolved in support of the voter's action.

TORRANCE, J., concurred in this opinion.