STATE, EX REL. WILLIAM WAGGONER, v. J. A. RUSSELL ET AL.

[FILED MARCH 2, 1892.]

1. **Elections:** BALLOTS: REQUIREMENT AS TO MARKING, DIRECTORY. The provision in section 20 of the act approved March 4, 1891, known as the "Australian ballot law," for the marking of ballots with ink, is directory only, and ballots, if in other respects regular, will, in the absence of fraud, be counted, although marked with a pencil.

2. ————: ————: A PEREMPTORY MANDAMUS will not be allowed, requiring the judges and clerks of election to count ballots rejected by them, after such ballots have been returned to the county clerk and are beyond their control.

ORIGINAL application for *mandamus.*

*C. C. Flansburg,* for relator.

*R. L. Keester, contra.*

POST, J.

At the general election in 1891 the relator and one Cassell were opposing candidates for the office of supervisor of Mullally township, Harlan county, and upon a count thereof each was credited with thirty-two votes. There was cast, in addition thereto, one vote for the relator, otherwise regular, but the mark opposite his name was made with a lead pencil instead of ink. The respondents, who were the judges and clerks of election, rejected said ballot, and relator now seeks a peremptory order from this court requiring them to meet and count said vote in his favor and declare the result. The question presented involves a construction of section 20 of the act approved March 4, 1891, known as the Australian ballot law. The provisions of said section, so far as they are material in this connection, are as follows:

" SEC. 20. When any duly qualified elector shall present himself at the polling place of his election district or precinct, for the purpose of voting at any election then in progress, he shall receive from a member of the election board a ballot upon the back of which two members of the board shall first write their names in ink; the elector shall then forthwith proceed alone into a compartment, if one be then unoccupied, and shall prepare his ballot by marking in the appropriate margin or place a cross (X) with ink opposite the name of the candidate of his choice for each office to be filled, or by filling in with ink the name of the candidate of his choice in the blank space provided therefor, and marking a cross (X) with ink opposite thereto; and in case of a question submitted to the vote of the peo-

ple, by marking in the appropriate margin or place a cross (X) with ink against the answer he desires to give."

In the construction of statutes of this character it is important to keep in mind two recognized principles:

First—That the legislative will is the supreme law and the legislature may prescribe the forms to be observed in the conducting of elections and provide that such method shall be exclusive of all others.

Second—Since the first consideration of the state is to give effect to the expressed will of the majority, it is directly interested in having each voter cast a ballot in accordance with the dictates of his individual judgment.

Recognizing the principle first stated the courts have uniformly held that when the statute expressly or by fair implication declares any act to be essential to a valid election, or that an act shall be performed in a given manner and no other, such provisions are mandatory and exclusive. By an application of the second principle, the courts, in order to give effect to the will of the majority and to prevent the disfranchising of legal voters, have quite as uniformly held those provisions to be formal and directory merely, which are not essential to a fair election, unless such provisions are declared to be essential by the statute itself.

Judge McCrary, in the last edition of his excellent work on the Law of Elections, section 190, states the rule as follows: "If the statute expressly declares any particular act to be essential to the validity of the election, or that its omission shall render the election void, all courts whose duty it is to enforce such statute, must so hold, whether the particular act in question goes to the merits, or affects the results of the election or not. Such a statute is imperative, and all considerations touching its policy or impolicy must be addressed to the legislature. But if, as in most cases, the statute simply provides that certain acts or things shall be done, within a particular time, or in a par-

ticular manner, and does not declare that their performance is essential to the validity of the election, then they will be regarded as mandatory if they do, and directory if they do not, affect the actual merits of the election."

Mr. Paine, in his work on Elections, section 498, expresses the same views in the following language: "In general those statutory provisions, which fix the day and the place of the election, and the qualifications of the voters, are substantial and mandatory, while those which relate to the mode of procedure in the election, and to the record and the return of the results, are formal and directory. Statutory provisions relating to elections are not rendered mandatory, as to the people, by the circumstance that the officers of the election are subjected to criminal liability for their violation. The rules prescribed by the law for conducting an election are designed chiefly to afford an opportunity for the free and fair exercise of the elective franchise, to prevent illegal votes, and to ascertain, with certainty, the result. Generally such rules are directory, not mandatory, and a departure from the mode prescribed will not vitiate an election, if the irregularities do not deprive any legal voter of his vote, or admit an illegal one, or cast uncertainty on the result, and have not been occasioned by the agency of a party seeking to derive a benefit from them."

The view expressed by these authors has the support of the great majority of cases in this country and England. In fact we are not aware that there is to be found in the reports any diversity of opinion on the subject. The following are a few of the many cases in point: *Gass v. State,* 34 Ind., 425; *Piatt v. People,* 29 Ill., 54; *Barnes v. Supervisors,* 51 Miss., 305; *Fry v. Booth,* 19 O. St., 25; *Tarbox v. Sughrue,* 36 Kan., 225; *State v. Nicholson,* 102 N. Car., 465. In the last case this rule was held to apply to a constitutional provision.

There are other sections of the act which shed light

upon the subject and assist us in determining the intention of the legislature. For instance, it is provided by section 13 "that the ballots shall be supplied by the county or other municipality," and that "ballots other than the offi-·cial white ballots printed by the respective county or mu-·nicipal clerks according to the provisions of this act shall not be cast or counted at any election." By section 23 it is provided that "No judge of election shall deposit in the ballot box any ballot unless it is identified by the signature of two of the judges of election," and that every person violating the foregoing provisions shall be guilty of a misdemeanor. By section 25 it is provided as follows: "Sec. 25. In the canvass of the votes any ballot which is not indorsed, as provided in this act, by the signature of two (2) judges upon the back thereof, shall be void and shall not be counted, and any ballot or parts of a ballot from which it is impossible to determine the elector's choice shall be void and shall not be counted ; *Provided,* That when a ballot is sufficiently plain to gather therefrom a part of the voter's intention, that it shall be the duty of the judges of election to count such part."

It may be as contended by respondent's counsel, that the proviso in the last section was intended to apply only to· ballots otherwise regular, but on which the voter has failed through negligence, illiteracy, or other cause to clearly express his intention as to every office named thereon. The inference is strong, however, from the language of the several sections to which reference has been made, that the legislature, by declaring a limited number of provisions to be mandatory, and a compliance therewith essential to a legal ballot, intended the other provisions as directory only. We are fortunately not altogether without authority on this question.

There have been numerous decisions under the English and Canadian election laws, after which ours appears to have been modeled. For instance, in *Grant v. McCallum,* ·

12 Canadian Law Journal, 113, it is held, that under a statute which directs the voting mark to be made with a pencil, a mark with ink does not render the ballot void. Mr. Wigmore, in an appendix to the second edition of his Treatise on the Australian Ballot System, page 193, after examining all of the reported cases upon that branch of the subject, concludes in the following language: " Wherever our statutes do not expressly declare that particular informalities avoid the ballot, it would seem best to consider their requirements as directory only. The whole purpose of the ballot as an institution is to obtain a correct expression of intention; and if in a given case the intention is clear, it is an entire misconception of the purpose of the requirements to treat them as essentials; that is, as objects in themselves and not merely as means."

It is urged as an objection to this construction of the statute that it will interfere with the secrecy of the ballot. Section No. 29 provides: " No elector shall place any mark upon his ballot by which it may afterward be identified as the one he voted."

It will be noticed that a ballot marked in violation of the foregoing provision is not declared to be void. The force of the objection is apparent, however, if the effect of our construction would be to defeat or interfere with the secrecy of the ballot, since that is one of the primary objects of the law. The construction which we have given the statute will not, however, be attended with any such effect. It is not every mark by means of which a ballot might subsequently be identified which is a violation of the statute. The mark prohibited by law is such a one, whether letters, figures, or characters, as shows an intention on the part of the voter to distinguish his particular ballot from others of its class, and not one that is common to and not distinguishable from others of a designated class. The fact that a number of ballots are, without any evidence of a fraudulent intention on the part of the voters,

distinguishable from others cast at the same polling places, as, for instance, marked with a pencil or with ink of a different color, does not bring them within either the letter or spirit of the statute. The English and Canadian cases are not harmonious on the subject, but according to Wigmore, page 194, the sounder view is that the ballot itself must furnish evidence of an unlawful intention on the part of the voter, such as his initials or a mark known to be his, or the like. Neither can a ballot be said to be marked in violation of law because the voter, by reason of the happening of contingencies, or presence of conditions not contemplated at the time, is subsequently able to distinguish it from all others. It is true the ballot in controversy in this case might be distinguished by the voter who marked it, since it is the only one at the polling place marked with a pencil. Yet the same result would follow in every case where a single vote is cast for any one of the several candidates named on the ballot. We are aware that our views on this branch of the subject are not in harmony with the recent cases in the supreme court of Connecticut, viz., *Talcott v. Philbrick*, 59 Conn., 478, and *Fields v. Osborne*, 21 Atl. Rep. [Conn.], 1070. In the last case, under a statute substantially like ours, but which authorizes the printing of tickets by the respective political parties, it was held that the name on the tickets of one party, of a candidate for judge of probate when said office could not be filled at that election, and on the other of additional words descriptive of one of the offices, were distinguishing marks for which the ballots of both parties should be rejected. To our minds, however, the reasoning of the dissenting judges is the more satisfactory and convincing and certainly more in accord with the weight of authority. We think, too, that the construction given our statute is most promotive of fairness and purity in elections, and less liable to result in the disfranchising of honest voters through mere omissions or mistakes of their own or the negligence or design of public officers.

We have not overlooked the case of *People v. Board of Canvassers,* in the New York court of appeals, 29 N. E. Rep., 327. The statute of that state provides for official ballots of the different parties and requires the county clerk to see to having them printed and distributed. For the purpose of identifying them as official, they are all required to be printed in the same way, upon the same kind of paper, and on the back of each ballot must be printed in prescribed type the words "Official Ballot for ——," and after the word "for" shall follow the name of the polling district for which it is prepared, and a *fac simile* of the signature of the clerk. It is further provided that there shall be no indorsement on the ballot other than as above. By another section it is provided that no inspector of elections shall deposit in any ballot box any ballot which is not properly indorsed and numbered, and that no ballot which has not the official indorsement shall be counted. By still another section it is provided that all ballots on which the voter or any person with his knowledge has placed any mark with intention that it shall afterward be distinguished, shall be void and shall not be counted. The county clerk in that case, by accident or design, sent to one polling district the ballots prepared for another in the same town and *vice versa,* so that the ballots voted by one party in the first district of the town of C. bore the number of the second district, and those voted by the same party in the latter bore the number of the first district. For this irregularity the ballots in question were all declared illegal and void by the court, on the grounds that the indorsement thereon was not prescribed by law, and was a distinguishing mark within the meaning of the statute. The reasons alleged by the majority of the court for holding the indorsement in question to be a distinguishing mark are not satisfactory to us. It is argued that by means of the erroneous designation thereon, the ballots were readily distinguishable as those of one political party,

since the mistake only involved those of one party.    This is true no doubt, yet the ballots deposited in any box, it is assumed, may always be classified politically, from the choice of candidates by the voters.    That case affords an excellent illustration of the dangerous consequences of a strict construction of election laws, and the imposing upon innocent voters of penalties for the dereliction of public officers.    Ballots to the number of 1,200 were rejected and the majority of voters of a district disfranchised through no fault of their own, but on account of the act of a public official, in whose integrity and efficiency they had a right to rely.    We agree with the views expressed by Judge Peckham in his dissenting opinion in that case, who after stating the facts substantially as above says :

"The mere statement of the proposition to reverse the result of an election under such circumstances and for such a cause is calculated to create in most minds a feeling that, if actually consummated, gross injustice would thereby be done, and that no fair reading of any ballot law would permit its consummation.    To utterly disfranchise hundreds of innocent legal voters because the employe or messenger of some public officer made a mistake like the one in question, seems to me to work a burlesque on the ballot act and its construction.    Where any particular construction which is given to an act leads to gross injustice or absurdity, it may generally be said that there is fault in the construction, and that such an end was never intended or suspected by the framers of the act.    A construction of this kind placed upon the act here under discussion certainly tends to bring the law itself into contempt.    The construction of this act by the majority of the court is, as I believe, wholly unnecessary, and (I say it with great respect) unreasonable."

Notwithstanding our conclusion that the ballot in controversy is valid and should have been counted, we must deny the peremptory writ, for the reason that the ballots

have all been returned to the county clerk and are not now in the custody or under the control of the respondents. We might have dismissed the relator's action on that ground without constructing the statute but have felt constrained, in view of the urgent request of counsel, to examine the more important question presented by the record.

DISMISSED.

THE other judges concur.