DICKERMAN, RESPONDENT, *v.* GELSTHORPE, APPELLANT.

[Submitted February 23, 1897.   Decided March 1, 1897.]

*Election Contest—Australian System—Marking Ballots.*

Section 1361 of the Political Code, provides that if a voter "shall desire to vote a straight party ticket, he may do so by making a cross at the head of the list representing his party ticket. If he shall desire to vote for any candidate or candidates on any other list, he shall make a cross opposite the name of every candidate for whom he desires to vote;" and section 1403 provides that "if part of a ballot is sufficiently plain to gather therefrom the elector's intention, it is the duty of the judges of election to count such part." *Held,* that where a ballot is marked with a cross at the head of a party list, which contains no candidate for a certain office, and is marked with a cross opposite the name of a candidate for that office under another list, the ballot should be counted for all candidates under the party list and for the candidate so marked.

SAME—Where a ballot is marked with a cross at the head of a party list, and a cross is marked opposite the name or names of one or more but not all of the candidates under that list, and no other marks are made, the ballot should be counted for all candidates under the list.

SAME—"D" and "G" were candidates for the same office; eight ballots were marked with a cross at the head of the list containing "D's" name; on the same ballots a cross was marked opposite the names of certain candidates other than "G" under another list. *Held,* that these ballots should have been counted for "D."

SAME.—If the eight ballots above referred to had also been marked with a cross opposite "G's" name, then they should not be counted either for "G" or "D."

*Appeal from District Court, Cascade County.   C. H. Benton, Judge.*

PROCEEDING by A. E. Dickerman against W. H. Gelsthorpe, to contest an election.   Judgment in court below was for contestant.   Reversed.

Statement of the case by the justice delivering the opinion.

This was a proceeding instituted under the provisions of Title II, part III, of the Code of Civil Procedure of Montana, to

contest an election to the office of county treasurer of Cascade county. At the election held November 3, 1896, Dickerman was a candidate for the office on the Republican and Silver Republican tickets. Gelsthorpe ran on the Democratic and People's party tickets. The official returns as canvassed showed that Gelsthorpe had received 48 votes more than his rival. Upon the trial the district court found that 72 ballots had been erroneously counted for Gelsthorpe. Each of these 72 ballots was marked with a cross in the circle either under the designation ''Democratic'' or ''People's Party,'' and contained a cross opposite the name of Hartman, the candidate for representative in congress, whose name appeared in the ''Silver Republican'' column. Neither the Democratic nor the People's party had a candidate for congress, and there was a blank in their respective columns for that office. Exception was saved to the rejection of said ballots. The lower court, over the objection of the contestant, Dickerman, counted for Gelsthorpe 66 ballots marked as follows: with a cross in the circle under the ''Democratic'' or ''People's Party'' designation, and with a cross or crosses opposite the names of some candidate or candidates other than Gelsthorpe's in the same list under the crossed circles. The lower court also refused to count for Dickerman eight ballots marked with a cross in the circle under either the Republican or Silver Republican columns, and with a cross opposite the names of candidates other than Gelsthorpe in the Democratic and People's party list. Dickerman was declared to have been elected by 14 votes. If Dickerman had been allowed the 8 votes aforesaid, and Gelsthorpe the 72 votes mentioned, Gelsthorpe's majority would have been 50 votes. Judgment was rendered for the contestant, Dickerman. The contestee, Gelsthorpe, has appealed therefrom.

The sections of the statutes under which the questions involved in the appeal must be decided, are as follows :

Section 1354 (Political Code, codes 1895): ''Ballots prepared under the provisions of this chapter must be white in color and of a good quality of printed paper, and the names must be

printed thereon in black ink. The ballots used in any one county must be uniform in size, and every ballot must contain the names of every candidate whose nomination for any special office specified in the ballot has been certified or filed according to the provisions of this title, and no other names. The list of candidates of the several parties shall be placed in separate columns on the ballot, in such order as the authorities charged with the printing of the ballots shall decide. As near as possible the ballot shall be in the following form :

| REPUBLICAN. | DEMOCRATIC. | PEOPLES' PARTY. | PROHIBITION. |
|---|---|---|---|
| O | O | O | O |
| For Governor<br>John E. Rickards. | For Governor.<br>T. E. Collins. | For Governor.<br>Wm. Kennedy. | For Governor.<br>J. M. Waters. |
| For Lieut. Gov.<br>A. C. Botkin. | For Lieut. Gov.<br>H. R. Melton. | For Lieut. Gov.<br>H. H. Cullum. | For Lieut. Gov.<br>J. C. Templeton. |
| For Sec. of State,<br>L. Rotwitt. | For Sec. of State,<br>B. W. Folk. | For Sec. of State.<br>J. W. Allen. | For Sec. of State.<br>E. M. Gardner. |

—And continuing in like manner as to all candidates to be voted for at such election. Every ballot must also contain the name of the party or principle which the candidates represent, as contained in the certificates of nomination. Below the names of candidates for each office there must be left a blank space large enough to contain as many written names of candidates as there are persons to be elected. There must be a margin on each side of at least half an inch in width, and a reasonable space between the names printed thereon, so that the voter may clearly indicate, in the way hereinafter provided, the candidate or candidates for whom he wishes to cast his ballot. Whenever the secretary of state has duly certified to the county clerk any question to be submitted to the vote of the people, the county clerk must print in the regular ballot, in such form as will enable the electors to vote upon the question so presented in the manner in this title provided. The county clerk must also prepare the necessary ballots whenever any question is required by law to be submitted to the electors of any locality, and any of the electors of the state generally, except that as to all questions submitted to the electors

of a municipal corporation alone, the city clerk must prepare the necessary ballots. The elector if he shall so desire, may vote his straight party ticket by making a cross within the circle at the head of the list representing his party.''

Section 1361 : ''On receipt of his ballot the elector must forthwith, without leaving the polling place and within the guarded rail provided, and alone, retire to one of the places, booths or compartments, if such are provided, and prepare his ballot. If he shall desire to vote a straight party ticket, he may do so by making a cross at the head of the list representing his political party. If he shall desire to vote for any candidate or candidates on any other list, he shall make a cross opposite the name of every candidate for whom he desires to vote; in case of a ballot containing a constitutional amendment or other question to be submitted to the vote of the people, by marking an X opposite the answer of the question or amendment submitted. The elector may write in blank spaces, ·or paste over any other name, the name of any person for whom he wishes to vote. In marking a ballot, any elector is at liberty to use or copy any unofficial sample ballot which he may choose to mark, or have marked, before entering the compartment or booth, but no elector is at liberty to use, or bring into the polling place, any unofficial, sample ballot printed in the exact style, manner, width or character of paper of the official ballot. After preparing his ballot the elector must fold it so that the face of the ballot will be concealed and so that the endorsement stamped thereon may be seen. He must then vote forthwith, and before leaving the polling place.''

Section 1403 : ''In the canvass of the vote any ballot which is not endorsed, as provided in this title, by the official stamp, is void and must not be counted, and any ballot or parts of a ballot from which it is impossible to determine the elector's choice, is void and must not be counted; if part of a ballot is sufficiently plain to gather therefrom the elector's intention, it is the duty of the judges of election to count such part.''

*Stanton & Stanton* and *Pigott & Veazey*, for Appellant.

Respondent is seeking to sustain the judgment.  · He has not appealed, and although successful in his attempt to incorporate his exceptions in our bill, no argument is required to  satisfy this court that his exceptions have no place therein and are not to be considered.    ( *Whittam* v. *Zahorik* (Ia.), 59 N. W. Rep. 57.)   Sections 1354 and 1361 contain a  provision which is identical in substance ·with that portion of  section 22 of the election law of Iowa making  provision for voting a straight party ticket :   Citing 59 N. W. 61; *State* v. *Hagen*, 60 N. W. 108; *State* v. *Allen*, 62 N. W. 38; *Stackpole* v. *Hallahan*, 16 Mont. 40, 40 Pac. 80; *State* v. *Saxon*, 30 Fla. 688, 12 So. 218.

*Carpenter & Carpenter, James W. Freeman* and *Ransom Cooper*, for Respondent.

Citing *Vallier* v. *Brakke*, 64 N. W. 180; *McKittrick* v. *Pardee*, 65 N. W. 23; *Young* v. *Simpson*, 42 Pac. 666.

BUCK, J.—Counsel for respondent construe section 1361 in connection with section 1354 of the Political Code, as follows :

"How to Prepare Ballots.   The law does not allow a voter in any case to erase any names on his ballot. The law requires voting to be by the X-mark.   First, on receipt of his ballot, the elector must forthwith and alone retire to one of the compartments, and prepare his ballot as follows :

"How to Vote a Straight Ticket.   (1) If the voter shall desire to vote a straight party ticket, he may do so by making a cross in the circle at the head of the list representing his political party.   No other marks are necessary in  such a  case. Or (2) he may omit the cross in the circle at the  head of the ticket, and make a cross opposite the name of each and  every person on his party list for whom he desires to vote.

"How to Vote a Mixed Ticket.   Omit the cross in the circle at the head of any list, and make a cross opposite the name of each and every person on any list for whom the voter desires to vote.

''How to Vote Where no Candidate's Name is Printed. If no name of a candidate appears on his political list,—as, for instance, if no candidate for congressman is printed on a party list,—the voter may vote for a person for any such office as follows : (1) He may paste the name of the person for whom he desires to vote in the blank space left for the candidate's name in such list, and always in such case must make a cross opposite such pasted name; or (2) he may write the name of the person for whom he desires to vote in the blank space left for the candidate's name in such list, and always in such case must make a cross opposite such written name.''

The foregoing interpretation of the manner in which a voter should prepare the form of his ballot under said sections 1354 and 1361 is substantially correct. It is insisted, however, in behalf of respondent, that the provisions of section 1361 as to the manner in which a voter shall mark his ballot are mandatory, and that section 1403 does not justify or contemplate any other construction. Counsel for respondent ask, ''What was the true purpose of section 1403?'' and, answering, say : ''It was this : When a voter has made an honest attempt to comply with the law, and has gone far enough to show his intention to comply with the law, in marking his ballot, then the aid of section 1403 may be invoked; as, for example, when the voter attempts to make a cross, and makes not a perfect one, * * * and when the voter does not get his cross directly opposite the name of the candidate, but a little above or below. * * * An intent expressed in a way not authorized by the law is not expressed at all. * * * Section 1403 does not impose any additional duty upon judges of election or courts. If that section was entirely stricken from the statute books, the same duty rests upon those officers of the law (judges of election). It would still be their duty to count any part of the ballot which expresses the intention of the voter in the way and manner the law directs it to be expressed, and no less a duty to refuse to count it when such intention is not so expressed.''

All this line of argument is controverted by counsel for ap-

pellant, who insist that section 1403 serves a much broader
purpose, and that the provisions as to how ballots should be
marked contained in section 1361 (however explicit and liter-
ally imperative the language considered by itself) are not man-
datory when due weight is given to the general object of the
statute, and particularly to section 1403 aforesaid.

It is a general rule that election laws must be liberally con-
strued.    This court, in *Stackpole* v. *Hallahan,* 16 Mont. 40,
40 Pac. 80, (on page 57, 16 Mont., and page 85, 40 Pac.,) an-
nounces that "in the construction of election laws the whole
tendency of American authority is towards liberality, to the
end of sustaining the honest choice of the electors." The rea-
son for this rule is that the paramount and ultimate object of
all election laws under our system of government is to obtain
an honest and fair expression from the voters upon all ques-
tions submitted to them.    Underlying the Australian ballot
system—embodied in the present election laws of this state—
is the same principle.    This new system was adopted because
it was considered an improvement as to details on the old sys-
tem adhered to in the preceding election laws of the territory.
The primary object of both systems was to obtain an expres-
sion of the will of the people.    The new system furnishes the
latest and most modern safeguards evolved from practical ex-
perience to secure the individual volition and independence of
the voter, and prevent fraud and coercion in any form.    It is
apparent that any form of voting prescribed by election stat-
utes, while a natural and necessary incident, is still only an in-
cident to the main object in the enactment of the same.    In
considering the details of any and all means by which an end
is to be accomplished, the end itself must never be overlooked.
Hence, it is our duty in this controversy—if we can, under
the law—to count all ballots honestly cast; for, if the voter
substantially complies with the prescribed statutory method
for preparing and casting his ballot, the main purpose of the
election law is complied with.

The distinctive feature of the Australian ballot system is the
use of the mark in connection with the names of the candi-

dates and questions to be voted on; and, of course, unless the mark is employed to indicate the choice of the voter in his ballot, the ballot he casts is a nullity, however clearly that choice might otherwise be expressed. (See *Martin* v. *Miles,* 46 Neb. 772, 65 N. W. 889.) But if, from the marking of the ballot in substantial compliance with the law, the intent and choice of the voter clearly appear, then his ballot should be counted, unless the statute expressly or by clear inference forbids it; otherwise the true spirit of the election law might be violated by subordinating the essence to a mere element of detail, and substance might be sacrificed to form. The elective franchise is not conferred upon the citizen by the legislature. or by virtue of legislative enactments. The right to vote is a constitutional right, and is one of the bulwarks of our form of government and system of civil liberty.

In *State* v. *Russell,* 34 Neb. 116, 51 N. W. 465, the question of when statutory provisions as to the manner of voting are mandatory and when directory, is clearly discussed. The opinion by Post, J., quotes first section 190 of the last edition of McCrary on the Law of Elections. That section is as follows : "If the statute expressly declares any particular act to be essential to the validity of the election, or that its omission shall render the election void, all courts whose duty it is to enforce such statute must so hold, whether the particular act in question goes to the merits or affects the result of the election or not. Such a statute is imperative, and all consideration touching its policy or impolicy must be addressed to the legislature. But if, as in most cases, the statute simply provides that certain acts or things shall be done within a particular time, or in a particular manner and does not declare that their performance is essential to the validity of the election, then they will be regarded as mandatory if they do, and directory if they do not, affect the actual merits of the election."

Section 448 of Paine on Elections is also quoted. The opinion then states : "The view expressed by these authors has the support of the great majority of cases in this country and

England.   In fact, we are not aware that there is to be found in the reports any diversity of opinion on the subject,''—citing numerous authorities.   In the dissenting opinion of Chief Justice Andrews and one of the associate justices in *Talcott* v. *Philbrick* (Conn.) 20 Atl. 436, on page 439, we find this language :   "Doubtless the legislature has the constitutional power to place any and all restrictions about a ballot, or about the act of voting, which, in its judgment, are necessary or proper to secure independent action by the voter, or to make intimidation, cheating or bribery at the polls impossible, or as nearly so as can be done by legislative enactment; and when the legislature has in clear and explicit words said that a ballot shall be void for any cause, the courts must so declare, even though the cause seems to them unreasonable.   But on the other hand, no voter is to be disfranchised, and no ballot is to be declared void, on doubtful construction.   All statutes tending to limit the the exercise of the elective franchise by the citizen should be liberally construed in his favor; and, unless a ballot comes within the letter of the prohibition against a particular kind of a ballot, it should be counted.   A great constitutional privilege, the highest under the government, is not to be taken away on a mere technicality, but the most liberal intendment should be made in support of the elector's action whenever the application of the common-sense rules which are applied in other cases will enable the courts to understand and render it effective,''—citing authorities.

In a recent opinion of the New York Court of Appeals (*People* v. *Wood*, 42 N. E. 536) Andrews, C. J., says :   "The object of elections is to ascertain the popular will, and not to thwart it.   The object of election laws is to secure the rights of duly-qualified electors, and not to defeat them.   Statutory regulations are enacted to secure freedom of choice and to prevent fraud, and not by technical obstruction to make the right of voting insecure and difficult.''

Wigmore on Australian Ballot System (2d Ed. p. 193) says: "Whenever our statutes do not expressly declare that particular informalities avoid the ballot, it would seem best to

consider their requirements as directory only. The whole purpose of the ballot as an institution is to obtain a correct expression of intention; and if, in a given case, the intention is clear, it is an entire misconception of the purpose of the requirements to treat them as essentials,—that is, as objects in themselves, and not merely as means.'' The general rule is clear, then, that unless statutory provisions as to voting are expressly declared to be mandatory, or by clear inference were necessarily intended to be so, the courts should regard them as directory only.

Counsel for respondent urge that the provisions of section 1361 are so clear and plain that they cannot be misunderstood. We cannot agree with this statement. They are not so free from ambiguity that even an intelligent voter may not readily be misled by them. Nowhere in the election statutes of·this state is there any express declaration that the said provisions of section 1361 are mandatory. The following cases have been cited as holding that ''the provisions of the statute as to voting are mandatory : '' *Taylor* v. *Bleakley* (Kan. Sup.) 39 Pac. 1045; *Lay* v. *Parsons* (Cal.) 38 Pac. 447; *Parvin* v. *Wimberq* (Ind. Sup.) 30 N. E. 790. The Kansas decision, *supra*, was rendered under an election statute which directly declared that a vote not marked in the manner prescribed should not be counted. The California opinion, above, enunciates the doctrine more by way of dictum than decision. In the Indiana case, *supra*, the court cites as one of the reasons for its decision a section of the state's statutes which declared that when a stamp was placed upon a ballot so as not to touch ·a square thereon, the stamp should be held to be a distinguishing mark, and the ballot, in consequence, should not be counted. The decision, in *Curran* v. *Clayton*, 86 Me. 42, 29 Atl. 930, does not impress us as correctly stating the law. But it is unnecessary to comment upon the decisions of other courts, for most or all of them were rendered under statutes differing from the one before us. If we construe section 1403 as appellant claims it should be construed, then the question of whether the provisions of section 1361 are mandatory or

not is readily answered.    In *State* v. *Russell, supra,* the supreme court of Nebraska directly passed upon section 20 of the election laws of Nebraska; and said section 20 is almost identical with section 1403 of the Montana statute.    It was contended by counsel in the Nebraska case that the scope of section 20 was of the same limited nature that respondent's counsel claim for section 1403.    But the Nebraska court held otherwise, and construed it in a much broader sense.    The decision in *Parker* v. *Orr* (Ill. Sup.) 41 N. E. 1002, is also directly in point.    We are of opinion that section 1403 was clearly intended to modify sections 1354 and 1361, and that the provisions of these two last-named sections must be construed in connection with section 1403.    From the language of the last-named section it is clear to us that the provisions of section 1361 as to the manner of preparing a ballot are mandatory as to the use by the voter of the cross-mark to indicate his choice, but in other respects (so far as this appeal is concerned) are merely directory.    Even if the ballot is not correct in form under the requirements of section 1361, if from the cross-marks placed upon it the intent of the voter as to the whole ballot, or any part thereof, clearly appears, then the whole ballot or such part thereof, as the case may be, should be counted.

In this view of the law, can it be said that it is impossible to determine from their ballots the choice of the 72 electors whose votes were rejected by the lower court?    They were marked with a cross in the circle at the head of the Democratic or People's party list, and in each a cross was placed opposite Hartman's name in the Silver Republican list or column. The name of no candidate for congress appeared on the Democratic or People's party list.    We think it is clear that the intent of these voters was to cast a ballot for their own straight party ticket and also for Hartman.    These voters, counsel for respondent claim, by the use of a cross opposite Hartman's name, must be held, in the eye of the law, to have intended to vote only for a congressman.    Upon this theory their votes by crosses in the circle for all the other candidates listed on the

straight party tickets, even for presidential electors, were nullified. On the same principle, if a voter marks a cross opposite the name of an independent candidate for constable, standing alone in another list, his whole straight party vote would have to be sacrificed to his vote for constable. In our opinion, the cross in the circle at the top of the list is, under the statute, so far as the legal intent is concerned, equivalent to placing a cross opposite the name of each and every candidate in the list under said circle. The legal intent from the cross in the circle is not subordinate to the intent manifested by marking crosses opposite the names of particular candidates in other lists. If these 72 voters had omitted a cross in the circle, and had marked a cross opposite the name of each candidate in the list thereunder, no question would have arisen as to counting these ballots. By marking their ballots as they did, the same result was accomplished. *Whittam* v. *Zahorik* (Ia.) 59 N. W. 57, sustains this view. We do not agree with the doctrine in *Young* v. *Simpson* (Col. Sup.) 42 Pac. 666, to the effect that a cross-mark opposite the name of a candidate evinces a particular intent which controls any general intent manifested by marking a cross at the top of the party list. It follows, therefore, that the lower court committed no error in counting for appellant the 66 ballots which were marked in the circle at the top of the list, and also contained marks opposite the names of certain candidates other than appellant's in the same list. No objection, or even suggestion, is made that these 66 ballots were marked for the purpose of distinguishing them. The court rejected eight ballots marked with a cross in the circle at the top of the list in which respondent's name appeared. On these eight ballots marks also had been placed opposite the names of certain candidates other than appellant Gelsthorpe in another list. This was error. These votes should have been counted for respondent. If on these ballots appellant's name had been marked, then it would have been impossible to determine whether the voter intended to vote for respondent or appellant, and a mark in the circle at the top in favor of respondent would have neutralized the mark opposite appellant's name.

There is one other question discussed in the briefs of counsel. Testimony was offered by contestant for the purpose of showing that the respondent had not been properly nominated on the Silver Republican ticket, and for the purpose of throwing out votes which had been cast for him under that party list. It is unnecessary for us to pass upon that point here, as a similar question in another election contest is now pending before us. The judgment of the lower court is reversed, and the cause remanded, with directions to render judgment in favor of appellant in accordance with the views herein expressed. Remittitur forthwith.

*Reversed.*

HUNT, J., concurs.