<hr/>

[No. 4184.]
## NICHOLLS v. BARRICK.

1. ELECTION CONTEST—COST BOND—PRACTICE.
In election contests the cost bond required of the contestor is for the benefit of the contestee and whether it be given or not in the first instance does not affect the jurisdiction of the court. If no cost bond be given at the commencement of the action, or if an insufficient one be accepted by the court, it is incumbent on the contestee to object at the earliest opportunity, otherwise he waives his right to object. An objection is too late after issues are joined and the cause set for trial.

2. SAME.
In election contests the cost bond should not be in any specified penalty, but should be conditioned for the payment of all costs. But the contestee cannot object to the bond because a penalty is specified, in the absence of a showing that the penalty fixed is insufficient to cover the probable costs which he may incur in the case.

3. ELECTION CONTESTS—PREJUDICE OF JUDGE—CHANGE OF JUDGE— WAIVER.

In an election contest case, an application for change of judge before whom the trial was to be had on the ground of prejudice because the judge had said that the ballots upon which the contest was made should be counted for the contestor, when presented on the day the case was set for trial and thirty days after the time the prejudicial statement is alleged to have been made, and does not show when contestee first obtained knowledge that the statement had been made came too late and was properly denied.

4. ELECTION CONTESTS—TIME FOR TRIAL—WAIVER.

The statute requiring a judge, in an election contest case, to fix a day for trial not more than twenty days after the issue is joined is for the purpose of enabling a speedy trial and is for the benefit of both parties, and may be waived by both parties consenting to fixing the date of trial at a later date.

5. ELECTION CONTESTS—STATEMENT OF CONTEST—QUALIFICATION OF CONTESTOR.

In an election contest a statement of contest which contains the averments and matters required by statute is sufficient to state a cause of action, and sufficiently alleges the qualifications of the contestor to hold the office.

6. ELECTION CONTESTS—CANVASSING THE VOTES.

An election contest cannot be maintained until after the votes have been canvassed by the canvassing board.

7. ELECTION CONTEST—TIE VOTE—DETERMINATION BY LOT.

The determination, by lot, by the canvassing board of which candidate shall have the certificate of election where two candidates having the highest number of votes have an equal number, is not such settlement of the matter as will prevent the defeated party from contesting the election on the ground that legal votes for him were not counted or that illegal votes were counted for his opponent.

8. ELECTIONS—MARKING BALLOTS—FUSION TICKETS.

In an election where several political parties under their distinctive party names unite upon one ticket, ballots cast with the words, "I hereby vote a straight 'fusion' ticket," were not invalid as being marked in such manner as to distinguish them from other ballots cast.

9. ELECTIONS—MARKING BALLOTS—INTENTION OF VOTER.

A ballot substantially marked as the law requires and from which marks the intention of the voter can be ascertained is a legal ballot, and should be counted.

10. SAME—FUSION TICKETS.

Where several political parties united upon one and the same ticket, each party filing the ticket under its distinctive party name, and the ticket was generally spoken of by newspapers and the people as the "fusion" ticket, and the only opposition ticket was nominated and filed by one political party, ballots cast with the words, "I hereby

vote a straight 'fusion' ticket" clearly show the intention of the voters, and should be counted for the candidates on the combined ticket of the several parties.

*Appeal from the County Court of Jefferson County.*

At the last general election held in the county of Jefferson, the parties to this action were candidates for the office of sheriff of that county. Appellant was the candidate of the Republican party, and appellee the candidate of the People's, Silver Republican, Teller Silver Republican, Democrat and Populist parties. The canvassing board found that each had received an equal number of votes, whereupon it determined by lot which was elected, which determination resulted in favor of the appellant, to whom was issued a certificate of election. Appellee, as contestor in the court below, brought his action to contest the election of appellant, as contestee. In his statement filed for this purpose, appellee set forth his intention to contest the election of appellant to the office of sheriff, and stated therein that he, appellee, claimed to be elected to that office; the time the election was held for such office; that he was an elector of Jefferson county, and also the causes upon which he based such contest. The form of the official ballot, so far as it referred to the office of sheriff, was as follows: " I hereby vote a straight————ticket, except where I have marked opposite the name of some other candidate."

| FOR COUNTY SHERIFF. | (VOTE FOR ONE) | MARK IN THIS COLUMN. |
|---|---|---|
| WILLIAM H. BARRICK. | People's Party. Silver Republican. Teller Silver Republican. Democrat. Populist. | |
| JOHN NICHOLLS. | Republican. | |
| | | |

All other candidates for county offices were similarly

designated, there being but two for each office, namely, one republican, and one for the several parties of which appellee was the candidate. On forty-three of these ballots voters had written in the blank space, at the head of each, the word "fusion," fourteen of which were counted by the election officers in certain precincts in favor of appellee, and twenty-nine rejected in various other precincts. The canvassing board made no attempt to determine which candidate, if either, was entitled to these ballots, but determined the results from the returns made by the election officers. December 21, 1899, issues were joined on the pleadings filed, and the cause set for hearing January 9th following. At the time the action was commenced appellee filed a bond for the payment of costs in the sum of $200. On the day set for trial, the parties appeared and contestee filed three motions, one to dismiss the action on the ground that the contestor had failed to file the bond provided by law; one to strike the bond given from the files and to require contestor to file another; and a third motion, or petition, that the judge before whom the cause was pending refrain from trying it, and that he call in another for that purpose, which petition was based on the alleged prejudice of the judge, in that about the 9th day of December, 1899, and after the action was commenced, he had expressed himself to the effect that the ballots in controversy should be counted. Each of these motions was overruled. By written stipulation of counsel, the trial of the cause was then continued to January 23d. On the latter date, by written stipulation, signed by counsel for the respective parties, the cause was again continued until January 30th. No evidence was taken in the cause until the latter date. Before the commencement of the trial, contestee moved to dismiss the contest for want of jurisdiction of the court to hear or try the cause, upon the ground that the trial had not commenced within twenty days after issue was joined. This motion was overruled.

Section 1673, 1 Mills' Ann. Stats., provides: " * * * Before the county judge shall be required to take jurisdiction of

the contest, the contestor must file with the clerk of said court a bond, with sureties to be approved by said judge, running to said contestee, and conditioned to pay all costs in case of failure to maintain his contest."

Section 1674, Mills' Ann. Stats., provides : " The contestor shall file in the office of the clerk of the county court * * * a written statement of his intention to contest the election, setting forth the name of the contestor, and that he is an elector of the county ; the name of the contestee, the office contested, the time of the election, and the particular cause or causes of the contest. * * * "

Section 1677, Mills' Ann. Stats., provides : "Immediately after the joining of issue as aforesaid, the county judge shall fix a day for the trial to commence, not more than twenty, nor less than ten, days after the joining of issue, as aforesaid. * * * "

Section 1626, Mills' Ann. Stats., which relates to the canvass of the vote cast at any election, provides : " * * * If any two or more persons have an equal number of votes for the same county or precinct office, and a higher number than any other person, the county clerk and his assistants aforesaid shall immediately determine by lot which of the two candidates shall be elected."

As to the form of the official ballot, the law requires " * * * The name of each person nominated shall be printed upon the ballot in but one place, but there shall be added opposite to the name of each person nominated the party or parties, or political designation expressed in not more than three words, for one party, as specified in each of the certificates of nomination, nominating him for the office. * * * " Sec. 1625r, 3 Mills' Ann. Stats.

It also provides that across the head of the ballot shall be printed the words : " * * * I hereby vote a straight———— ticket, except where I have marked opposite the name of some other candidate," and in designating how ballots shall be marked, states, "and any voter desiring to vote a straight ticket may write within the blank space above provided for, the name of the party whose ticket he may wish to vote,

and any ballot so cast shall be counted for all the nominees upon said ticket, except when the voter has marked opposite the name or names of any individual candidate of some other party, which individual marks opposite such individual candidate shall count for them, and shall not be counted for the candidates for the same office upon the ticket whose party name the voter has so filled in the blank at the head of the ticket. * * * "   Laws, 1899, p. 177.

· " * * * No voter shall place any mark upon his ballot by means of which it can be indentified as the one voted by him. * * * "   Sec. 1625kl, 3 Mills' Ann. Stats.

Regarding imperfect or defective ballots, it also provides : " * * * If for any reason, it is impossible to determine the choice of any voter for any office to be filled, his ballot shall not be counted for such office, provided, however, a defective or incomplete cross marked on any ballot in ink, in a proper place, shall be counted, if there be no other mark or cross in ink on such ballot, indicating an intention to vote for some person or persons, or set of nominations, other than those indicated by the first mentioned defective cross or mark. * * * " Sec. 1625cl, 3 Mills' Ann. Stats.

Relative to the counting of votes by the election officers, the law directs that " * * * Each ballot shall be read and counted separately, and every name included in a marked set or list of nominations, or separately marked as voted for on such ballot, where there is no conflict to obscure the intention of the voter as aforesaid, shall be read and marked upon the tally list before any other ballot is proceeded with ; * * * " Sec. 1625el, Mills' Ann. Stats.

On the trial the questions were raised by contestee by motions and objections interposed, that the statement of contest was insufficient, and that contestor could not maintain the action after his right to the office of sheriff had been determined by lot.   The court ruled adversely to contestee, on each of those propositions.

On the foregoing record and the statutes to which reference has been made, the court below held that the forty-three bal-

lots in the blank space of which at the head of each had been written the word "fusion," should be counted in favor of the contestor, and declared him elected accordingly. From this judgment the contestee appeals. His counsel contend that the trial court erred in the following particulars:

1. In overruling the motions above referred to.

2. In holding that the statement filed by contestor was sufficient.

3. In holding that contestor could maintain this action after his right to the office in controversy had been determined against him by lot.

4. In counting for contestor the ballots marked "fusion."

Mr. WM. C. MATHEWS, Mr. EDWARD KENT and Mr. WM. A. DIER, for appellant.

Mr. J. W. BARNES and Mr. JOHN T. BOTTOM, for appellee.

MR. JUSTICE GABBERT delivered the opinion of the court.

1. The bond for costs required by the statute in proceedings of this character is for the benefit of the contestee. Whether it be given or not in the first instance, does not affect the jurisdiction of the court. If none be given when the action is commenced, or if the one accepted be insufficient, it is incumbent upon the contestee, to object at the earliest opportunity; otherwise, he will waive his rights in this respect. In the case at bar he made no objection to the bond until after issues were joined, and the cause set for trial. The motion to dismiss was in the nature of a plea in abatement, which he could not interpose after answering on the merits. *Trustees v. Walters*, 12 Ill. 154; *Randolph v. Emerick*, 13 Ill. 344; *Yocum v. Waynesville*, 39 Ill. 320.

The bond in cases of this character should be conditioned for the payment of all costs, and not in any specified penalty. It being intended, however, to secure the contestee the re-

payment of any costs to which he might become entitled, he is not in a position to complain of the action of the court, in refusing to order a bond conditioned as the statute requires, in the absence of a showing upon his part that the penalty of the bond accepted was insufficient to cover the probable costs which he might incur in the case.

The application addressed to the trial judge, requesting him to call in another judge to try the cause, was not presented until the date set for the trial of the action. This application was based upon the alleged prejudice of the trial judge, in that he had made statements to the effect that the ballots in question should be counted in favor of the contestor. This statement appears to have been made some thirty days before the petition for a change of judges was presented. It does not appear when contestee first obtained knowledge that this statement had been made. Whether or not what the judge is said to have stated regarding the merits of this controversy was sufficient to disqualify him from trying the cause, it is not necessary to determine, as the petition should have been presented within a reasonable time after contestee was advised that it had been made. In view of the fact that thirty days had elapsed between the date when the trial judge is said to have made the statement attributed to him, and the time when the petition for a change was presented, in connection with the fact that no excuse is offered why this petition was not filed at an earlier date than it was, we are of the opinion that it came too late, and was, therefore, properly overruled. In this connection we suggest that a judge should refrain from expressing an opinion upon the law of any case pending, or likely to come before the court over which he presides, until properly submitted for his determination.

The object of the statute in requiring the judge to fix a day for the trial of the cause not more than twenty days after issue is joined, is for the purpose of enabling a speedy trial. This is for the benefit of both parties. They may waive this provision; that is what they did in this case by stipulation, and contestee thereby having consented to fixing

the date of the trial of the cause at a period greater than twenty days after issue was joined, cannot complain of the results of his own voluntary acts.

2. It is urged that the statement of contest filed by contestor is not sufficient in that it contains no averment regarding his qualifications to hold the office of sheriff. The act under which this proceeding was commenced is special in character, and furnishes a complete system of procedure within itself. *Schwartz v. County Court*, 14 Colo. 44. The statute provides what the statement of contest shall contain, and it is only necessary to set out in such statement the averments and matters required by the statute in order to state a cause of action. This the contestor did, and his statement was, therefore, sufficient.

3. A party cannot maintain an action to contest an election until after the votes are canvassed by the canvassing board. That body, in case of a tie between two or more persons for the same office, having a higher number than any other person, shall determine by lot which of the candidates is elected. This constitutes part of its duty as a canvassing board, and its determination, in case of a tie, must be settled in the way pointed out by the statute. Such action does not settle the question of the legality of any votes canvassed, or estop the defeated party from asserting that votes counted for his opponent were illegal.

4. In support of the proposition that the court erred in counting for contestor the forty-three ballots in question, counsel for appellant contend that the act over which the voter has control are mandatory, and that, therefore, these ballots were illegal, for two reasons: (1) Because not marked as required by law; (2) that the marks employed distinguish them from other ballots cast at the election.

Many authorities are cited in support of these propositions. As to the first, the conclusion of the courts so holding appears to be based upon the construction of particular statutes controlling elections under the Australian ballot system; that the provisions of such statutes relative to marking bal-

lots are mandatory, and that nothing short of a substantial literal compliance with the requirements of the law in this respect would suffice. Having so construed the statute in a given case, it logically follows that a ballot not marked as the law prescribed could not be counted. In the case at bar, however, these authorities are of but little assistance, as the decision of the question now under consideration must rest upon a construction of our own statute. With the second we are not concerned, because the marks employed upon the tickets are not of a character which distinguish them from other ballots cast, any more than if the voters had employed a straight political party name, instead of the word "fusion."

The prime object of all election laws is to obtain an honest expression of the voters on all questions submitted to them. The Australian ballot was adopted because it was believed that thereby bribery would be frustrated, and the voters freed from the equally pernicious influence of coercion and surrounding conditions. In considering the details of the act, the result sought to be accomplished must not be overlooked. *Dickerman v. Gelsthorpe*, 47 Pac. Rep. 999.

Our statute requires that the ballot be marked in a certain way. The main object of this requirement is to obtain an expression of the voters upon any question submitted to their determination, uninfluenced by the acts of others. All voters are not endowed with the same ability to construe a statute, or to understand instructions directing the manner in which ballots should be prepared. Even if they were, it would not be surprising if they failed to agree. The legislature undoubtedly has the power to prescribe reasonable restrictions under which the right to vote may be exercised. If it declares a ballot void under certain conditions, the courts must so hold; but no voter should be disfranchised, or ballot held void, upon a doubtful construction. All statutes which tend to limit the voter in the exercise of his right should be liberally construed in his favor. *Tibbe v. Smith*, 108 Cal. 101; *Owens v. State*, 64 Tex. 500.

This court has held that a ballot should be admitted if the spirit and intention of the law is not violated, even though not literally in accordance with its provisions ; and that unless the statute declares that a strict compliance with its requirements by the voters is essential to have their ballots counted, the courts will not undertake to disfranchise them if, in the attempted exercise of their right, there is manifestly an effort to comply in good faith with the statutory requirements. *Kellogg v. Hickman,* 12 Colo. 256 ; *Young v. Simpson,* 21 Colo. 460. See, also, *Bechtel v. Albin,* 134 Ind. 193 ; *State v. Fawcett,* 49 Pac. Rep. 346.

The intention of the voter, as expressed upon the face of his ballot, has always been regarded as the cardinal principle controlling the count. Under a system providing for balloting like the Australian, it is necessary that certain rules be prescribed to prevent confusion and secure uniformity. By this means the intention of the voter is to be ascertained; but when the statute does not declare, either expressly or by necessary implication, that particular informalities with respect to the marking of ballots render them illegal, it is a misconception to treat the requirements for this purpose as controlling essentials, instead of the means by which the object sought to be obtained shall be determined. Wigmore Aus. Ballot System (2d ed.), 193 ; *Waggoner v. Russell,* 34 Neb. 116 ; *Spurgin v. Thompson,* 37 Neb. 39.

That the legislature had in view the probabilities that in some instances ballots would not be marked precisely as the law specified, is apparent from the provisions relative to imperfect and defective ballots, as also those improperly marked, which do not, in fact, obscure the intention of the voter. At least, there is nothing in our statutes, so far as we are able to find, from which it can be inferred that unless voters mark their ballots in the manner required by the law, that they should not be counted. In the absence of such provisions, a construction holding that the provisions relative to the marking of ballots was mandatory, in the sense that they must be strictly observed, would result in sacrificing substance to form,

by treating the features of detail as of the essence of the law. *State v. Fawcett, supra ;* Wigmore Aus. Ballot System, *supra ; Waggoner v. Russell, supra ; Spurgin v. Thompson, supra.*

Tested by these rules, our construction of the statute is, that if a ballot is substantially marked as the law requires, and from such marking the intention of the voter can be ascertained, the ballot is legal, and should be counted. Filling in the blank at the head of the ticket is one of the ways designated by the statute for the voter to indicate his choice of candidates. It may be that if a ballot was so marked that it violated some provision of law, either expressly or by necessary implication, it would be rendered illegal, and the intention of the voter would be immaterial as against an express violation of the statute. It is not necessary, however, for us to determine that question in this case, because it is not presented.

The final question on the subject under consideration is, whether or not the intention of the voters who cast the ballots in question can be determined from the markings which they employed to designate their choice of candidates as between the parties to this action. The contestor was the candidate of several different parties; in other words, they had all united upon him as against his opponent. So with the other candidates for county officers. It is a well known fact, that certain political parties in this state for several years last past, at state, county and municipal elections, claiming practically to advocate the same principles, have united upon the same candidates for office, as against a political party which they claimed opposed these principles. This action of several political parties uniting in the way indicated is spoken of generally, through the press and by the people, as "fusion." The Standard Dictionary defines the word to mean "The act of coalescing two political parties, or the state of coalescence; used, also, attributively as a fusion ticket." See, also, Century Dictionary. Courts take judicial notice of those matters which may be desig-

nated "common knowledge." 1 Greenleaf on Evidence, § 6 ; *Watson v. State*, 55 Ala. 158.

It is not necessary to prove the meaning of terms which, from continuous use, have acquired a definite signification. *Watson v. State, supra; U. S. Express Co. v. Keefer*, 59 Ind. 263.

It is unnecessary, therefore, to resort to extraneous evidence for the purpose of ascertaining the choice of voters upon the forty-three ballots in question, as between the parties to this action. By employing the word " fusion " upon these ballots, there can be no doubt but that each of the voters so marking his ballot intended to vote for the contestor. In effect, he was a fusion candidate upon a fusion ticket. It being clear that these ballots were intended to be cast for the contestor, the judgment of the trial court in so holding was correct, and it is, therefore, affirmed. The costs of this appeal will be taxed to the appellant.

In conclusion, we suggest that the legislature has wisely simplified the official ballot, and also the manner of voting; that it is the duty of every voter to familiarize himself with the law governing the preparation of ballots, and to follow its provisions on this subject; and that a disregard of the law in this respect is at the peril of the voter so doing.

*Judgment affirmed.*