[No. 7233.]

### BALDWIN V. WADE.

Elections—Ballot—A ballot cast by a qualified elector, at an election held according to law, and at the time and place provided by law, should be counted if, therefrom, the intent of the voter can be ascertained with reasonable certainty, unless this is forbidden by some positive provision of the statute.—(112)

In the official ballot of a municipal election the name of Baldwin was printed as a candidate for mayor. Below this, and in the same space, the voter wrote the name of Wade. In the space left for this purpose, he placed a cross, the intersection of which was not directly opposite either name. He also wrote the names of three persons for whom he desired to vote as trustees, placing the name of the first of these in the space occupied by the last printed name, and with a cross at the right of it. Considering that the voter, if he desired to vote for Baldwin, had no occasion to insert the name of Wade, it was held that the ballot must be counted for Wade.—(113)

White, J., and Hill, J., dissented.

Another voter obliterated the printed name of Baldwin with ink, wrote the name of Wade above it, and placed a cross at the right. Held, that the ballot should be counted for Wade.—(114)

White, J., dissented.

Another ballot was in perfect form, but the name of the person voted for and the cross were written with an indelible pencil. Held, that this ballot should also be counted for Wade.—(114)

*Error to Prowers County Court*—Hon. W. E. FEE, Judge.

Mr. GRANBY HILLYER and Messrs. MERRILL & M'CARTY for plaintiff in error.

Mr. D. M. CAMPBELL for defendant in error.

Mr. JUSTICE MUSSER delivered the opinion of the court:

This is a contest arising over the election of mayor in the town of Granada. Baldwin was regularly nominated and his name printed upon the official ballot. Wade was not regularly nominated, and for this reason his name was not printed on the ballot. The citizens voted for him by writing his name on the ballot and placing a cross after it. A canvass of the returns showed that Baldwin received 65 votes and Wade 63, and a certificate of election was issued to Baldwin. Thereupon, Wade brought this contest in the county court. Trial was had. The court found that three ballots which had been rejected by the judges of election should have been counted for Wade and that Wade received 66 votes and Baldwin 65. Judgment was entered in favor of Wade, and from this judgment Baldwin comes to this court on error.

The only question to be determined is, Was the county court right in counting all or any of these three ballots for Wade? There is no fraud whatever. The three ballots are as clean and honest as ever came from a ballot box. Our statute with reference to the marking of ballots is quite lengthy and goes much into detail in describing the manner in which voters shall mark their ballots. After this matter of detail, occurs the following sections in the Revised Statutes, 1908:

"Sec. 2265. If a voter marks in ink more names than there are persons to be elected to an office, or if,

for any reason, it is impossible to determine the choice of any voter for any office to be filled, his ballot shall not be counted for such office. *Provided, however,* a defective or an incomplete cross marked on any ballot in ink, in a proper place, shall be counted if there be no other mark or cross in ink on such ballot indicating an intention to vote for some person or persons or set of nominations, other than those indicated by the first mentioned defective cross or mark. * * * No ballot without the official endorsement shall, except as provided in section twenty-two of this act, be allowed to be deposited in the ballot box, and none but ballots provided in accordance with the provisions of this act shall be counted.

"Sec. 2266. If an imperfect cross or mark be found near the name of a candidate in ink, which mark appears to have been made with intent to designate the candidate so marked as the one voted for, such ballot shall not be rejected, if the intent of the voter to designate the person for whom he intended to vote can be reasonably gathered therefrom"

Section 22 of the act (sec. 2244, Rev. Stats.) provides that substituted or unofficial ballots may be used in certain contingencies. So far as sec. 2265 is concerned, it is plain that it was the intent of the legislature that ballots should not be counted in the following instances: First, when the voter marks more names than there are persons to be elected to an office; second, when it is impossible to determine the choice of any voter for an office to be filled (in each of those two instances the ballot is not to be counted for the office affected); third, when the ballot is one not provided in accordance with the provisions of the act, in which latter case, the whole ballot is rejected. By sec. 2266, it is plain that a ballot shall not be rejected when the cross or mark is imperfect,.

if the intent of the voter can be reasonably gathered therefrom.

From these two sections, it is evident that it was the intent of the legislature that all ballots provided in accordance with the act, cast under the proper circumstances and marked substantially as the law provides, should be counted, if, as so marked by the voter, it is possible to determine his choice, and if his intent to designate the person for whom he intended to vote can be reasonably gathered therefrom, unless, of course, there is a positive provision of the statute forbidding the counting thereof. Technicalities are to yield in the face of the truth apparent on the face of the ballot. There is a provision in sec. 2235 which provides that there shall be left at the end of the list of candidates for each office as many blank spaces as there are persons to be elected, in which the elector may write the name of any person in ink, on the ballot, for whom he desires to vote, as a candidate for such office.

In *Heiskell v. Landrum,* 23 Colo. 68, this court said:

"It is true, as stated by appellant, that this court has held in a number of cases that where the intention of the voter can be ascertained, the vote should be counted, but this intention can never be given effect against the positive provisions of the statute."

In that case there was a positive provision of the statute, which expressly forbade the counting of a ballot marked as the one under consideration was.

And in *Nicholls v. Barrick,* 27 Colo. 443, the court says:

"Tested by these rules, our construction of the statute is, that if a ballot is substantially marked as the law requires, and from such marking the intention of the voter can be ascertained, the ballot is legal, and should be counted."

In the light of the law, as thus announced, the three ballots will be examined. A mayor and three trustees were to be elected. On each of the ballots there was a space bounded on the top and bottom by lines about 9-16 of an inch apart, and half way between the two lines was printed the name C. D. Baldwin. Below this space was a blank space about the same width, evidently left there, as provided by the statute, for the purpose of writing in the name of any person for whom the voter desired to vote.

Ballot No. 72. On this ballot, within the top space and on the lower line thereof, below the name of Baldwin, the voter wrote in ink the name of C. B. Wade, and at the right of the ballot, in the space designed for that purpose, he made a cross mark in ink. The intersection of this cross mark is not directly opposite either name, but is just below Baldwin's name and just above Wade's, and in the space intended for the mark. The voter wrote the names of the persons for whom he desired to vote as trustees and put cross marks after them, and in writing the name of the first one, he put it in the space occupied by the last printed one with his cross mark after it as he did in the case of the mayor. It is impossible to look at this ballot and say that the voter did not intend to vote for Wade. His intention to vote for him cannot only be reasonably gathered from the ballot, but such intention is evident beyond the possibility of a doubt. If he didn't want to vote for Wade, why did he write his name in? If he wanted to vote for Baldwin, he could have done so without writing Wade's name in. The writing shows that the voter was unskilled in the use of the pen. The fact that he wrote in Wade's name and put a cross nearly opposite it, plainly shows his intention to vote for Wade.

Ballot No. 100. In this ballot, the voter almost

obliterated with ink, the name of Baldwin printed on the ballot, and above it wrote in the name of Wade and placed a cross mark in ink in the appropriate space. Looking at this ballot, there is no possibility that the voter intended to do anything else than to vote for Wade, and again, not only can such intention be reasonably gathered therefrom, but the possibility of any other intention is entirely excluded.

Ballot No. 45. In this ballot, Wade's name was written in the blank space left for it and the cross mark made in the appropriate place. It is a perfect ballot with the exception that the name and the cross were written with an indelible pencil. The marks of an indelible pencil are about as incapable of erasure as fluid ink. An indelible pencil makes a mark that is practically indelible.—(Standard Dictionary.) The object of the statute in requiring the names to be written and the marks made in ink, was to prevent erasure. A mark that is practically indelible, considering the short time the ballots are to be preserved, is practically as enduring and incapable of erasure whether made in ink or with indelible pencil, and the object of the statute is reached in either case. Looking at that ballot, the intention of the voter is absolutely plain beyond contradiction. In the face of a statute which says, that, if for any reason, it is impossible to determine the choice of any voter for an office to be filled, the ballot shall not be counted for such office, clearly implying that if the converse is true, the ballot shall be counted, in the presence of the fact that the object and spirit of the statute has been complied with, and in the absence of any positive declaration of the statute that such a vote shall not be counted, it would be a sacrifice of truth for technicality to say that it ought not be counted.

It is thus seen that the county court arrived at the very right of the matter. That is the object of

inquiry, and when that end is reached, no person can, in any manner, shape or form, be injured, but everyone, the voters and the candidates, are awarded and given exactly what they are entitled to.

I am authorized to say that Chief Justice Campbell, as at present advised, is not prepared to concur with all that is said in the opinion concerning the marking of ballots with an indelible pencil. In other matters he concurs.                                    *Affirmed.*

Decision *en banc.*

Mr. JUSTICE WHITE and Mr. JUSTICE HILL dissent.

------

Mr. JUSTICE WHITE, dissenting:

Much as I dislike to dissent from an opinion approved by a majority of the members of this court, I am, nevertheless, compelled to do so in this case. I am wholly unable to accept as sound, the reasoning and conclusions set forth in the majority opinion, and will briefly present the matter as it appears to me.

At the election in question, there were but two sets of offices to be filled. The first, that of mayor by the election of one individual thereto; the second, that of trustees by the election of three individuals thereto.

The official ballots were printed by the proper authorities in the form provided by law. Baldwin, who was the candidate of the "Citizens' Party," was the only person who had been nominated by any party or organization for mayor, and his name was the only one for that office which was, or could be, printed on the official ballots. When the elector received a ballot for the purpose of casting his vote, that portion thereof necessary to illustrate my view (except as to the numbers, which will be hereinafter explained) was as follows:

The party name "Citizens" not having been written at the top of either of the ballots in question, a straight party ticket was not voted. Under such circumstances, the law requires, in order to vote for any candidate, whether the name be printed or written, that the elector place a cross (X), in ink, in the space opposite such printed or written name, respectively. To illustrate, by the use of the numbers with which I have designated the spaces on the above ballot: the elector, desiring to vote for Baldwin, having

received a ballot, could do so only by placing a cross
(X), in ink, in space No. 2, or, at least, near Bald-
win's name; or, if he desired to vote for Wade, he
could do so only by writing Wade's name in space
No. 3, and placing a cross (X), in ink, in space No. 4,
or, at least, near Wade's name so written.—Secs.
2235, 2236, 2259, Rev. Stats.

Ballot No. 72, or that portion thereof necessary
to this case, after being cast by the elector, appears
as follows:

Considering this ballot, it will be observed. that Baldwin's name appears in space No. 1, printed as the law required. A cross (X), in ink, appears opposite his name in space No. 2, the very place designated by law in which it should be placed to vote for Baldwin. In other words, the elector did exactly what the statute declares he should do to vote for Baldwin, and in that respect fulfilled every requirement of the law to make the ballot a vote for Baldwin. If he had gone no further, it could not be questioned that he had intended to, and had voted for Baldwin. He, however, went further. He wrote in space No. 1, in which Baldwin's name was printed, the name of Wade; but to have voted for Wade the statute required that the elector write that name, not where he did, but in space No. 3 and make a cross (X), in ink, not in space No. 2, opposite Baldwin's name, but in space No. 4, or, at least, near Wade's name.—Secs. 2235, 2236, 2259, Rev. Stats., *supra.* It is equally certain that if the elector had placed a cross (X), in ink, in space No. 2 opposite Baldwin's name, and written the name Wade in space No. 3, and did no more, it would have been a vote for Baldwin. It is likewise true, that if the elector had placed a cross (X), in space No. 2 opposite Baldwin's name and had written Wade's name in space No. 3, and placed a cross (X) in space No. 4, the vote could not have been counted for either, for the reason that the intent of the elector as shown by his acts, under the law, was to vote for both, and this the law would not allow.

The statute having declared that, in order to vote for a particular individual, the elector shall mark a cross (X), in ink, in a particular space opposite the printed or written name of the individual for whom he desires to vote, and having further provided, that certain imperfect or defective ballots or imperfect

marks shall not invalidate a ballot, if the intention of the voter can be ascertained therefrom, it certainly follows by necessary inference that a ballot not written in the manner required by the statute should be rejected, as it does not come within one of the classes excepted by the statute. There is no exception as to the place where "the elector may write the name of any person not printed on the ballot for whom he desires to vote as a candidate for such office." The place is fixed and certain. It is only by an adherence to such provisions that an elector can express his intent upon the ballot, and courts should not indulge in speculation as to such intent.

The holding of the court is, in effect, that a ballot which is in exact conformity with the law, to make it a vote for Baldwin is transformed into a vote for Wade, by the mere insertion of Wade's name in the space with, and fixed by law for, Baldwin's name. I confess myself unable to appreciate the logic of such holding. To count the ballot in controversy, for Wade, does violence to many express provisions of the statute. The name of Wade is written in the wrong space without authority or sanction of law; there is no cross (X), in ink or otherwise, in any space other than a space indicating a vote for Baldwin; a ballot, perfect in every way as a vote for Baldwin, is transformed into a ballot for Wade by a mere assertion of this court. In the opinion it is said: "If he didn't intend to vote for Wade, why did he write his name in?" A sufficient answer is, that the law expressly declares how the name of a candidate may be brought upon the official ballot and voted for, and points out the particular space in which such name shall be written. It is wholly immaterial what the intent of the elector was, unless his intent can be gathered from the ballot from things thereon appearing as done in substantial conformity to law.

This court has said: ''That the legislature has wisely simplified the official ballot, and also the manner of voting; that it is the duty of every voter to familiarize himself with the law governing the preparation of ballots, and to follow its provisions on the subject; and that a disregard of the law in this respect is at the peril of the voter so doing.''—*Nicholls v. Barrick,* 27 Colo. 443. · And further in the same case, ''It may be that if a ballot was so marked that it violated some provision of law, either expressly or by necessary implication, the intent of the voter would be immaterial as against an express violation of the statute.'' The statute provides that there shall be left at the end of the printed list of candidates for each different office as many blank spaces as there are persons to be elected to such office, in which the elector may write the name of any person not printed on the ballot for whom he desires to vote as a candidate for such office. This, and this alone, measures the power of the elector in that respect.

As to ballot No. 100, the opinion says: ''In this ballot the voter almost obliterated with ink the name of Baldwin printed on the ballot, and above it wrote the name of Wade and placed a cross mark in ink in the appropriate space.'' It is true the name of Baldwin is practically obliterated with ink. It is likewise true that the name ''C. B. Wade'' is written above that of Baldwin's, but it is so far above that the lower part of the ''C'' barely intersects the top line of space No. 1 wherein Baldwin's name was printed. The ''B'' crosses the line slightly, as does ''W,'' and the ''a'' touches it in the same manner as does ''C,'' while ''d'' and ''e'' are entirely above the line. Space No. 4, as hereinbefore stated, was the only space or place upon the ballot in which an elector was authorized, under the law, to ''write the name of any person not printed on the ballot, for whom he

desires to vote." The power to "write in" some other name is in reality the power to supplement the printing of the ballot, and must necessarily be measured by the statute. The cross (X) on the ballot in question was in space No. 2, where it should have been as a vote for Baldwin. The election board considered it impossible to ascertain the intent of the elector from the ballot. I think their conclusion was more nearly right than the conclusion of this court, that it was a vote for Wade.

I am of the opinion that the holding as to ballot No. 45 is most far-reaching in its evil effect. I very much fear that this court has, thereby inadvertently thwarted and annulled, to a great extent, the most wholesome purpose of the Australian ballot; that is, its secrecy. The reiterated requirement of the law, that the cross (X) shall be in ink, and that each booth shall be supplied with sufficient ink and pens at public expense, was not solely, as stated in the opinion, "to prevent erasure," but was for another and far more important purpose; that is, for uniformity in marking in order to maintain secrecy. With the annulment of this wise provision of the statute by judicial decree, the way to intimidation or fraud is made plain, and its perpetration easy of accomplishment. It is not difficult to imagine the "boss," the "ward healer," or the unscrupulous politician supplying his men with various colored indelible pencils, and exacting the use thereof in the preparation of ballots, to the end that it may presently be known for what party the elector cast his vote. It is true that different colored inks might be used for like purpose, but a certain provision of the law removes all probable danger from such source. It requires each voting booth to be supplied, at public expense, with pens and ink. A nonuse of the inks provided at public expense, and so convenient to the elector, and the

use instead of different colored inks would not only be inconvenient, but likewise the purpose thereof would be so readily discoverable as to make it highly improbable that resort will ever be had thereto. Not so with indelible pencils. They are in common use and of various colors. Moreover, the purpose of the law is "to protect the voter, prevent fraud and secure a fair count." This can be best subserved by upholding and sustaining the safeguards designed for that purpose by the law-making power.

Mr. Justice Hill, dissenting:

I cannot agree with the conclusion reached by the majority in holding that ballot No. 72 was properly counted for the defendant in error, Wade, but, as I view it, the cross is perfect and is opposite the name of Baldwin and his party designation (citizens'); it is also in the square designated for the cross to be made in in order to vote for him. To properly set forth its exact condition, I have had that portion of the ballot in controversy photographed and made a part hereof. (See diagram on opposite page.)

In the case of *Heiskell v. Landrum,* 23 Colo. 65, this court held, that under our statute, as it then existed, a cross marked opposite the name of an individual candidate is a vote for that individual; also, that when a ballot is marked against a party emblem and is also marked against one or more names of candidates in another list; the ballot is void as to any office so doubly marked; in substance, that one neutralizes the other. In that case it was also held that where the intention of the voter can be ascertained, the vote shall be counted, but it is further stated that *"this intention can never be given effect against the positive provisions of the statute.* * * *

but where the statute prescribes a form and declares a compliance therewith essential in order to have the ballot counted, the statute must govern.''

The only material change relative to this question since the foregoing opinion was rendered, is section 2266, Revised Statutes 1908, enacted in 1901; the part relative reads:

''If an imperfect cross or mark be found near the name of a candidate in ink, which mark appears to

have been made with intent to designate the candidate so marked as the one voted for, such ballot shall not be rejected, if the intent of the voter to designate the person for whom he intended to vote can be reasonably gathered therefrom."

In adopting this section the legislature unquestionably had in view the probability that in some instances ballots would not be marked precisely as the law specifies, but there is nothing in the section, or in any of our statutes, so far as I have been able to ascertain, from which it can be inferred that where a voter marks his ballot for a candidate whose name is printed upon the ballot in the manner required by law, that, nevertheless, under the guise of attempting to ascertain the intention of the voter, it should not be counted as marked, but should be counted for another, and, in this respect, I am unable to appreciate wherein, in complying with the law as it is written, it is sacrificing substance to form.

In the case of *Nicholls v. Barrick,* 27 Colo. 442, in commenting upon our voting system, Mr. Justice Gabbert, speaking for the court, among other things, said:

"The intention of the voter, as expressed upon the face of his ballot, has always been regarded as the cardinal principle controlling the count. Under a system providing for balloting like the Australian, it is necessary that certain rules be prescribed to prevent confusion and secure uniformity. By this means the intention of the voter is to be ascertained;
\*    \*    \*

"Tested by these rules, our construction of the statute is, that if a ballot is substantially marked as the law requires, and from such marking the intention of the voter can be ascertained, the ballot is legal, and should be counted. Filling in the blank at the head of the ticket is one of the ways designated by the

statute for the voter to indicate his choice of candidates.''

This language is specially applicable here. Ergo, making a cross at the right of the name of the candidate Baldwin, opposite his party name and in the square provided for that purpose, is one of the ways designated by the statute for the voter to indicate his choice for that candidate.

In the above case Mr. Justice Gabbert also said:

''It may be that if a ballot was so marked that it violated some provision of law, either expressly or by necessary implication, it would be rendered illegal, and the intention of the voter would be immaterial as against an express violation of the statute.''

This is the exact condition which confronts us here in order to count this ballot for the candidate Wade, for the reason that in so doing we expressly violate the provisions of the statutes which state that when so marked it shall be counted for the candidate Baldwin. When the voter complied with the provisions of the statute in voting for the candidate Baldwin, his vote should be so counted, unless other provisions provide otherwise when certain other conditions exist. When we examine the other provisions of our statutes, the only exception to be found is in section 2265, Revised Statutes 1908, which provides that where an elector has voted for more candidates than there are offices to be filled, the vote shall not be counted for such office; hence, in my opinion, the most that can be consistently contended for is that if this voter, by writing the name of Wade in the space belonging to Baldwin, thereby also voted for Wade, then under this section his vote should not be counted for either. In such cases the statement in the case of *Nicholls v. Barrick, supra,* by Mr. Justice Gabbert that, ''it is the duty of every voter to familiarize himself with the law governing the preparation of

ballots, and to follow its provisions on this subject; and that a disregard of the law in this respect is at the peril of the voter so doing," is applicable. This is the last expression of this court that I have been able to find applicable to this case, and, if it is to be accepted as the settled law in this jurisdiction, then, the elector casting this vote violated not only the express provisions of the statute, but also the principle announced in this case, and, in my opinion, neither he nor the candidates have any just right to complain of the rejection of his vote for this office which the record shows was done by the judges of election, although counted for the candidate Wade by the trial court.

It must be conceded that an intent expressed in a way not authorized by the law, but in direct conflict with the provisions of the law, is not expressed at all. When the voter complies literally with the statute, as a matter of law his vote is thereby cast as the statute designates, and, in my opinion, this court should make no further examination of the remainder of the ballot or otherwise, for the purpose of finding out what his intention may have been, nor inquire into his intention at all when the result is in direct conflict with the provisions of the statutes.

Similar views are aptly expressed *In re Contested Election of Frank T. Redman,* 173 Pa. St. 63, wherein the court declined to allow a vote to be counted for a candidate where the voter marked opposite his name printed on the ballot and also wrote in the name of the same candidate upon the ballot in the blank space provided for that purpose; referring to which that court said:

"If he desires to vote for any of those whose names are printed on the official ballot, he must do so by 'marking' as directed by the act. If he wishes to vote for persons whose names are not already on

the ballot, he can do so by 'inserting' their names in the blank spaces prepared therefor;  *  *  *

"In so far as the mode of voting is thus specifically prescribed by the act, all other modes are, by necessary implication, forbidden.  *  *  *

"The original ballot in question was not produced in the court below, but, assuming the copy attached to the petition to be correct, it shows on its face that the 'unknown' voter, whoever he may have been, disregarded the plain requirement of the law in preparing his ballot, in that he voted or undertook to vote, by 'marking,' for a person whose name was printed on the ballot, and also voted or undertook to vote by 'inserting' an additional name in the blank space provided exclusively for names not already on the ballot. The presumption is that he knew the blank space was intended only for the insertion of names not printed on the ballot, and that the person whose name he wrote in the blank space was not the same person whose name, printed in the left-hand column, he marked with a cross (X). If the voter's first act, in preparing his ballot, was the 'insertion' of the name found in the blank space, he had no right, whatever, to afterwards attempt to vote by 'marking' for either of the candidates for justice of the peace whose names are printed in the left-hand column. On the other hand, if his first act in preparing his ballot was marking with a cross (X) as appears in the left-hand column, he had no right to afterwards 'insert' the name 'John S. Lowry' in the blank space. It was thus manifestly impossible for the election officers, or any one other than the voter himself, to determine which of the acts,—that of 'marking' in the left-hand column or that of 'writing' the name 'John S. Lowry' in the blank space, was first in order of time, or whether the voter intended by both acts to vote for two persons or for only one and the same

person; or, in brief, what may have been his purpose in doing what he is admitted to have done in preparing his ballot. When the election officers came to count the votes, it must have been quite evident to them, on inspection of the ballot in question, that the specific mode of voting prescribed by the act had been disregarded by the voter, and hence they were clearly right in refusing to count the vote for any one. It was plainly a vitiated, illegal ballot, made so by the act of the voter himself. If such an utter departure from the positive requirements of the act were sanctioned or encouraged, either by election boards or courts, it would lead to the most serious consequences. Under the new ballot law, it is not enough that the intention of the voter may possibly be ascertained, or his irregular and equivocal acts explained by evidence dehors his ballot.. The purpose of the legislature, in prescribing the form of ballot and specifically directing how it should be prepared and used by the voter, was to avoid all such inquiries and the consequences likely to result therefrom. It was intended that the ballot, when prepared by the voter and delivered to the proper election officer, should be *per se* self-explanatory. There is no good reason why it should not be so.''

In the case of *Whittam v. Zahorik,* 91 Iowa, at page 36, in commenting upon the same rules which I maintain should be followed here, that court said:

''Whether a ballot should be counted does not depend solely upon the power to ascertain and declare the choice of the voter, but also upon the expression of that choice in the manner provided by the statute. In that respect the statute under consideration has made a radical change in the law. The only mark which is recognized as competent to express the choice of a voter is a cross (X), and it is not only necessary to use a cross, but it must be placed at the

appropriate margin or place.   *   *   *   It is within the power of the general assembly to prescribe regulations which the voter must follow in preparing his ballot, and those provided for in the statute under consideration are reasonable, and abundant provision is made to enable the voter to know and follow them.''

In the case of *Voorhees v. Arnold,* 108 Iowa, page 84, where the name of the candidate was written in the wrong place, that court said:

''The ballot was properly rejected.   It is proper to state here that the law does not recognize the writing of a name on a ballot except by inserting it in the ballot in the proper place.''

Upon the same subject, in commenting upon their Australian election law, similar to ours, in the case of *Vallier v. Brakke,* 7 S. D., at page 354, the court said:

''The statute having prescribed the manner in which the elector may designate by marks upon his ballot the candidate for whom he intends to vote, and declared the effect of such marks, neither the judges of election nor the courts are authorized to go beyond those marks in order to ascertain the voter's intention.   When, therefore, the elector makes a cross in the circle at the head of a ticket, and erases no name thereon, the law declares it shall be counted for the party ticket 'throughout,' and no cross or mark on any other ticket can be resorted to to defeat that intention.''

To the same effect are *People v. Seaman,* 5 Denio's Reports (N. Y.) 409; *Beardstown v. Virginia,* 76 Ill. 34.

But by what process of reasoning can it be said that the voter intended to vote for Wade?   In order to vote for him it was necessary, under the statutes, to write his name in the blank space provided on the ballot, and to make a cross in ink in the appropriate margin or place opposite his name.   The elector did

not write his name in the blank space provided for that purpose, and no part of the cross was in the appropriate margin or in or near the place designated. We find nothing in section 2266 which provides that a vote shall be counted for a candidate whose name is written in the space occupied by the name of another candidate and is not written in the place provided for his own name, and especially when it is written in the space belonging to another and that candidate's name has not been erased therefrom. Again, is it not just as reasonable to believe that the voter wrote the name of the whole opposition ticket on his ballot, which he did, thinking probably that was necessary in order to have his vote counted for any of them, and then deliberately voted for Baldwin on the opposite ticket? He knew how to vote for the other opposing candidates, and by what right had the court to assume that he did not know how to vote for Wade, if he wanted to? Again, he may not have intended to vote for either of the candidates for mayor, but in this manner thought he would neutralize the effect of the vote so that, as provided for by the statute, it would not be counted for either. Again, he may have intended to accomplish what has repeatedly come under the personal observation of the writer, where certain electors fixed up their ballots in a peculiar manner in order to present certain difficult questions to be disposed of by the judges of election, so as to ascertain in what manner they would be disposed of, without any desire or intention to vote for any one especially, but in order to ascertain, under those conditions, how they would be counted, if at all, for particular candidates. Many other reasons could be suggested why it should not be counted for either candidate, but these are some of the reasons which, to my mind, are convincing that it would be a dangerous precedent if judges of

election, or even courts, under such facts, are to be allowed, by mere guesswork, theories and conjectures, to attempt to say what the voter intended.

Again, assuming *arguendo* that this ballot bears palpable evidence that the person casting it intended to vote for Wade, that intention should not be given effect, because it is in direct conflict with the provisions of the statute, which provide that in such case the vote should be counted for the candidate Baldwin. I·can see no escape from this conclusion. The substance of the majority opinion, is to say to the voter that, although you have cast a vote for Baldwin strictly and technically in the manner prescribed by the statute, yet upon account of the fact that you have written the name of Wade below that of the candidate Baldwin, and in a place where the statutes do not authorize it shall be placed, the provisions of the statutes are to be disregarded in order that the court can make a guess as to what your intentions were in so doing. I think it is apparent upon the face of the ballot, that it is a guess pure and simple, and we have been furnished with no authorities to the contrary.

Again, in the case of *Heiskell v. Landrum, supra,* this court said:

"It is true, as stated by appellant, that this court has held in a number of cases that where the intention of the voter can be ascertained, the vote should be counted, *but this intention can never be given effect against the positive provisions of the statute.* * * * Where the statute prescribes a form and declares a compliance therewith essential in order to have the ballot counted, the statute must govern."

Our statute now prescribes a form and this form was strictly complied with in the casting of this vote for the candidate Baldwin, and the exception adopted under which it is sought to twist it into a vote for the

candidate Wade, is not within the exceptions provided for by the other sections of the statute. Besides, counting this vote for Wade violates two express provisions of the statutes. First, it disregards those provisions that were strictly complied with by the voter in making this ballot a valid one for the candidate Baldwin. Second, it violates the provisions of the statute in counting it for Wade for the reason that his name is written in the wrong place, and there is no cross in ink or otherwise in or near the place where the same should have been placed in order to have cast a vote for him in the manner provided by our statutes. The statute says that when an imperfect cross or mark is found near the name of the candidate in ink, which appears to have been made with intention to designate the candidate so marked as the one voted for, such ballot shall not be rejected, if the intent of the voter can be reasonably gathered therefrom. This ballot does not contain an imperfect cross near the name of Wade, but it does contain a perfect cross opposite the name of Baldwin and directly opposite his party designation and in the manner provided for by our statute in order to cast a legal vote for him. The word ''near'' is a relative term, and its precise import can only be determined by the surrounding facts and circumstances. —Words and Phrases, p. 4687. A cross in the appropriate space opposite the name of Baldwin cannot, under the circumstances, be said to be near the name of Wade. Besides, the statutes do not provide that the name of Wade shall be written in any other column than that provided for by the act. Upon the question of imperfect or defective ballots, sec. 2266, Rev. Stats., 1908, refers only to imperfect crosses or marks to be found near the name of a candidate in ink, which marks appear to have been made with intent to designate the candidate so marked as the

one voted for; such ballot shall not be rejected if the intention of the voter to designate the person for whom he intended to vote can be reasonably gathered therefrom.

The rule that where there is a conflict between the printed and written portions of an instrument, the latter should prevail as expressing the intention of the party, is not applicable here, for the reason that the statute says, a ballot marked like this shall be counted for Baldwin, hence the voter cast a legal vote for him; but, if it can also be contended it is a vote for Wade, then he voted for more candidates than there were offices to fill, in which case it is provided it shall not be counted for either. This identical question was under consideration in the case of *Blankinship v. Israel,* 132 Ill., wherein, at page 520, that court said:

"The ballots numbered 37, 509 and 264, respectively, bore the name of appellee printed thereon, and under his name the name of appellant was written, the words 'For Assessor' preceding both—there being no erasure of either name. Appellant offered evidence tending to show that the voters voting these ballots intended them to be cast for appellant, and the name of appellee was intended to be erased. The court properly refused to count either of these ballots. The statute provides, 'if more persons are designated for any office than there are candidates to be elected, * * * such part of the ticket shall not be counted for either of the candidates.'"

To the same effect is the case of *Newton v. Newell,* 26 Minn., wherein, at page 539, the court said:

"Section 19 of the election law declares, 'if a ballot is found to contain a greater number of names for any one office than the number of persons required to fill the said office, the said ballot shall be

considered void as to all the names designated to fill such office, but no further.' This is peremptory.

"Whenever the *fact* of the excess of names exists, the ballot is, *pro tanto,* void, and cannot be counted. The statute leaves no room for any speculation or conjecture as to the intention of the voter. As respects the office thus voted for, the ballot must be rejected. The six ballots for sheriff upon which the name of either Newell or Wing was printed, but not in any way obliterated, and the name of Newton written, were, therefore, improperly counted for Newton, and must be deducted from his total vote as found by the court."

Section 2265, Rev. Stats. 1908, provides that if a voter marks in ink more names than there are persons to be elected to office, or if for any reason it is impossible to determine the choice of any voter for any office to be filled, his ballot shall not be counted for such office. In this section it will be noted the word "or" is used after the word "office," so that in harmony with the cases last quoted, if the name "Wade" written in the Baldwin space is to have any effect upon the vote in favor of Baldwin, it would simply be to negative its result, as the cross would then have been marked opposite the name of each of these candidates, in which case, the elector would have marked more names than there are persons to be elected; this section provides that in such case his ballot shall not be counted for such office.

Again referring to the wrong location upon the ballot, of the name of the candidate Wade, a somewhat similar state of facts as here are to be found in *Salcido v. Roberts,* 67 Pac. (Cal.) 1077, wherein that court, in part, said:

"The statute nowhere says that writing a name in the wrong column shall invalidate the ballot, but the plain inference of the special provision is that the

written name shall not be counted unless written in the blank column. This is, in substance, to say that the ballot shall be counted for all other officers who are properly voted for. This has been expressly so held as to the second subdivision, where a voter marks more names than there are candidates for an office. It was held that the result was the ballot should not be counted for such office, but should be for all other purposes. * * * We do not think it would be in accord with the reason and spirit of the law to hold that because the voters, although writing the name of Halley for justice under the proper title, wrote it in the wrong space, the consequence must be to declare the entire ballots void. We hold, as the statute declares, that they simply could not have been counted for justice of the peace."

In the case of *Apple v. Barcroft,* 158 Ill. 649, upon a somewhat similar question, that court said:

"The statute must be substantially complied with. To permit the voter to substitute some other method of his own of marking his ballot to express his choice, for the one provided, would practically nullify the statute. It would not only lead to uncertainty in ascertaining the voter's intention, but would destroy the secrecy of the ballot by means of distinguishing marks."

In which case, it was held that a cross to the right of the name of a candidate, between such name and the square opposite the name of an opposing candidate, did not sufficiently show the intention of the voter to permit the ballot to be counted for either candidate. In commenting upon this question, the court said:

"As to the ballot in question, as the cross is between the names of appellant and appellee, being at the right of the former and at the left of the latter, the only reason for supposing the elector intended to

vote for appellant rather than for appellee is, that
the cross is nearer appellant's than appellee's name.
To hold such a ballot as one cast for either candidate
would be mere guesswork.''

The same question of reaching the intent of the
voter was under consideration by the supreme court
of Illinois in the case of *Parker v. Orr,* 158 Ill. 609,
where, in construing a section of their statutes, some-
what similar to sec. 2265 of our Rev. Stats. 1908,
that court, among other things, said:

"Section 26 expressly provides: 'If the voter
marks more names than there are persons to be
elected to an office, or if, for any reason, it is impos-
sible to determine the voter's choice for any office to
be filled, his ballot shall not be counted for such of-
fice,'—plainly meaning that if the voter's choice can
be ascertained from his ballot it shall be counted, if
it can be done *consistently with other provisions* and
the object of the act.''

This, in my opinion, is the paramount reason
why this vote should not be counted for the candidate
Wade, because it cannot be done *consistently with
other provisions of our election laws,* but if it is done,
is in direct conflict with their provisions.

In the last case cited other ballots were under
consideration, pertaining to which, the court, in part,
said:

"It is clear that the voter attempted to make a
cross in the proper place to indicate his choice of can-
didates, but succeeded more or less imperfectly. It
being clear, in such cases, that the intention was to
conform to the statute, * * * they were prop-
erly counted.''

I think just such errors as last stated were in-
tended to be covered by section 2266 of our statutes.
It states if an imperfect cross or mark be found near
the name of the candidate in ink, which appears to

have been made with intent to designate the candidate so marked as the one voted for, such ballot shall not be rejected if the intent of the voter to designate the person for whom he intended to vote can be reasonably gathered therefrom. But in this case we have not an imperfect mark, neither have we a mark, within the meaning of this act, near the name of the candidate Wade, for the reason that under the surrounding facts and circumstances a cross in the space opposite the name of Baldwin cannot be said to be near the name of Wade.

A somewhat similar question was passed upon by the supreme court of Minnesota in the case of *Hughes v. Upson,* 84 Minn. 85, in which case, on a ballot similar in form to ours, the voter made a cross in the square provided for that purpose opposite the printed name of a candidate. Below this, in the space provided for that purpose, he wrote in the name of another person. The statutes of that state, in part, read as follows:

"When the elector shall have written the name of a person in the proper place for writing the same, he shall be deemed to have voted for that person, whether he makes or fails to make a cross-mark (X) opposite such name."

In which case that court said:

"The name of John 'Rhoads' having been written in the ballot, the statute required that it be counted as a ballot for him, unless it appears therefrom by reason of the X opposite the name of the contestant, that it was intended as a vote for the latter, or unless the real intent of the voter cannot be determined. We are unable from any examination of the ballot to ascertain the intention of the voter. He not only placed an X in the space opposite the contestant's name, but he took the trouble to write the name of another person, eligible to the office, in the space provided for that exact purpose. He left the

matter in doubt, and one of these acts negatives and destroys the other."

In the case of *Bass v. Leavitt,* 105 Pac. (Cal.) 771, the trial court attempted to give effect to the intention of the voter under a somewhat similar state of facts as here. In rejecting its efforts in this respect, the appellate court said:

"Ballot No. 4, cast in the Janesville precinct, shows in the column entitled 'Blank Column,' and below and outside of all spaces in which are the names of officers to be voted for, the word 'Bryan,' written with a pencil. * * * Sec. 1211, Pol. Code, provides: 'Any name written upon a ballot shall be counted for the office near which it is written, provided it is written in the 'blank column.' Here the name is not written under any particular office, but under all of them. The ballot was erroneously counted for respondent."

In addition to those heretofore quoted from the principles announced in the following cases, in my opinion, are also in harmony with the views herein expressed.—*Dickerman v. Gelsthorpe,* 47 Pac. (Mont.) 999; *Martin v. Miles,* 65 N. W. (Nebr.) 889; *Carwile v. Jones,* 101 Pac. (Mont.) 153; *Ogg v. Glover,* 72 Kan. 247; *Potts v. Folsom,* 104 Pac. (Okla.) 353; *McKittrick v. Pardee,* 8 S. D. 39; *Spurrier v. McLennan,* 115 Iowa 461; *McCarthy v. Wilson,* 146 Cal. 323; *Borders v. Williams,* 57 N. E. (Ind.) 527.

To my mind, the principal objections to the opinion here are: First, that it gives a construction to section 2266 that the language will not warrant; second, that it overlooks the provisions contained in other sections of our statutes. That these different sections of our election laws should be considered and construed *pari materia* is elementary. That full force and effect should be given to every section and each and every paragraph thereof, if it can be done,

is likewise elementary, and I think an examination will disclose no conflict in them in regard to the question under consideration.

Another weakness which I think the opinion discloses, is its erroneous assumption of what was the duty of the trial court; this will be found in its last paragraph, wherein it is stated, "It is thus seen that the county court arrived at the very right of the matter. That is the object of inquiry." I cannot concede that this is always a question for the courts to determine. That all laws do not always arrive at the very right of the matter is fully demonstrated in this state by the unsettled condition shown by the continuous changes in them, the repeal of old ones and the enactment of new ones. Whether a law is right or wrong depends upon the mind of the person who is considering the question; but if it is the law, then it is the duty of all good citizens to abide by it and accept the old adage of "what is written is written," and it is not for any citizen, or even the courts, to say, in disposing of anything, that it is the very right of the matter, if it is in conflict with the provisions of the law, or in such case to say that this is the sole object of inquiry. The case under consideration is a law case. It involves the construction of statutes. There being no dispute as to the facts, the sole question for this court to determine is what is the law of the case, and when the language is so clear and explicit as to leave no room for construction, when it interprets itself, it should be so announced regardless of the opinion of any one as to what is the very right of the matter, if that opinion is in conflict with the law as it exists. In my opinion, this was not done by the trial court pertaining to ballot No. 72; this alone would necessitate a reversal of the judgment, for which reasons I do not care, at this time, to give any expression of my views upon the other assignments of error urged.